SEBASTIAN COUNTY EQUALIZATION BOARD, et al.
v. The WESTERN ARKANSAS COUNSELING &
GUIDANCE CENTER, INC.

88-53                                                    752 S.W.2d 755

Supreme Court of Arkansas
Opinion delivered July 11, 1988

Martin, Vater, Karr & Hutchinson, by: Charles Karr, for appellants.

Paul L. Giuffre, for appellee.

Friday, Eldredge & Clark, by: Walter A. Paulson II, for amicus curiae Arkansas Council of Community Mental Health Centers, Inc.

STEELE HAYS, Justice. The only issue is whether the trial court correctly granted a tax exemption to the appellee, Western Arkansas Counseling and Guidance Center.

The Guidance Center is a community mental health clinic operating in six counties in western Arkansas. It was organized in 1969 as a non-profit corporation pursuant to Ark. Code Ann. §§ 20-46-301 (1987), et seq., as are similar mental health centers throughout the state. The Guidance Center serves six counties including Sebastian County and owns properties in all six counties.

The Center's properties have been exempt from taxation since the Center acquired them, but as a result of reappraisal the Sebastian County property was added to that county's tax rolls in 1986. The Center appealed to the County Equalization Board and the county court where the assessment was affirmed. The assessment was then appealed to the circuit court which reversed the county court and granted the Center tax exempt status from the assessed ad valorem taxes. It is from that order that the appellants bring this appeal.

Appellants' argument is that the Center failed to meet its burden of showing its status as a charitable organization as required by the pertinent constitutional provision, Art. XVI, § 5:

(b) The following property shall be exempt from taxation: public property used exclusively for public purposes; churches used as such; cemeteries used exclusively as such; school buildings and apparatus; libraries and grounds used exclusively for school purposes; and buildings and grounds and materials used exclusively for public charity.

■ In order to qualify for the exemption under the constitution, an entity must show that it is a charitable organization and that the property claimed for exemption is used exclusively for charitable purposes.

There can be no real dispute that the Center is a charitable organization. It was stated in *Burgess, Judge* v. *Four States Memorial Hospital*, 250 Ark. 484, 464 S.W.2d 690 (1971) that a benevolent and charitable organization's property used as a hospital may be constitutionally exempt from taxation if it is open to the general public, if no one may be refused services on account of inability to pay and if all profits from paying patients are applied to maintaining the hospital and extending and enlarging its charity. *See also Hot Springs School District* v. *Sisters of Mercy*, 84 Ark. 497, 106 S.W. 954 (1907).

Appellant does not contend that a mental health clinic is distinguishable from a hospital for purposes of applying the test of *Burgess, supra*, nor do we recognize a distinction. The Center's operations meet the requirements stated in *Burgess* in all respects. Pete Kennemer, the executive director of the Center testified that any resident of the six counties served by the Center who seeks its services would be treated, that the Center accepts anyone regardless of race, creed, color or ability to pay. The Center's acceptance and treatment of those who are unable to pay is further established by the Center's subsidizing of a majority of its clients, as noted below. Kennemer stated that any excess income was used for expansion or as operating income and none was used for private gain.

■ Turning to the primary argument, appellant insists because the Center has paying clients, it is not used exclusively for charitable purposes, as required by Art. XVI, § 5 of the Constitution. However, as our cases have interpreted that provision, the fact that some patients pay for services does not destroy the constitutional exemption.

This question was directly answered in *Burgess, supra,* on similar facts where the same argument was made. The hospital in question was a non-profit corporation that was formerly owned by the St. Louis Southwestern Railroad Lines Hospital Trust and was used exclusively by employees of the railroad and its subsidiaries who were members of the trust. The hospital and its buildings were donated to the Four States Memorial Hospital in 1967. The evidence showed that 50-53 % of the hospital patients were members of the trust and an additional 700-1000 patients were not members. The hospital also saw approximately 2,000 patients under the Medicare program. Rates for all patients were the same and as to the Medicare patients, the difference in the amount billed and amount paid by Medicare was made up by paying patients. Over a three year period the hospital had written off $46,000 which was not made up by paying patients. In its second year of operation the hospital showed a gain of $45,152 most of which went to offset a deficit of $38,208 in the following year, and the balance went into service and improvements. The *Burgess* appellants argued that only three charity patients had been treated at the hospital. While the court did not comment on this figure specifically, it noted there probably would have been many more charity cases had it not been for Medicare.

The court went on to define what constitutes a charitable hospital, and then addressed appellants' arguments regarding the effect of the paying patients and the trust members on the hospital's exempt status:

> We do not agree with appellant that appellee's operation is so oriented toward service of the Employees Trust Association that, as a matter of law, it is outside the scope of the constitutional exemption. . . . It does not appear that the common directors of the hospital and the trust have acted, in any way, to prefer members of the trust over any member of the general public. *The mere fact that the members of the trust use the hospital along with the other members of the general public, and on the same basis, would not change its charitable purposes so long as its receipts from any source are held in trust for the furtherance of these purposes.* [Our emphasis].

Essentially the same response was given by this court in 1907

when this issue was first raised in *Sisters of Mercy, supra.* We held that the paying patients would not destroy the concept that the hospital was being used exclusively for charitable purposes, as long as the money received is "devoted altogether to the charitable object which the institution is intended to further." We believe this is the trend in other jurisdictions, that charitable hospitals will not lose tax exempt status even though some recipients may be able to pay some or all of the cost of benefits they receive. See 71 Am. Jur. 2d *State and Local Taxation* §§ 373, 386.

█ Compared to *Burgess*, these facts make a stronger case that the Center is used exclusively for charitable purposes. Pete Kennemer testified that as of June, 1968, the Center had 1,351 active cases. 470 of those, or 35%, were being seen without charge. Another 310 patients, 23% of the caseload, paid 10% of the fee. Thus, 58% of the Center's cases were individuals who paid no more than 10% of the fee or were seen for nothing. We find no merit in appellant's argument that the Center is not used exclusively for charitable purposes.

The Center also has a Community Building, which houses a gymnasium and four meeting rooms. The gymnasium is for use by the Center's patients and when not so used is open to the general public for a fee. The amount of the fee is not reported, but the program generated $8,274 in 1986 from approximately 250 members, about $33 per individual. The meeting rooms are used for various classes held by the Center and are also made available to numerous non-profit organizations at no cost. They are rented to private organizations for $20 per day and in 1986 produced about $600, which the director testified may not cover the cost of the utilities.

█ The gymnasium and meeting rooms present no impediment to exemption. The correlation between physical fitness and mental health justifies the operation of a gymnasium by the Center and its use as a recreational facility by the general public entails only an incidental fee. The meeting rooms which are used by other non-profit groups without charge and which produce only about $600 annually from private usage do not destroy the exempt status of the building. *Hilger* v. *Harding College*, 231 Ark. 686, 331 S.W.2d 851 (1960); *Yoes* v. *City of Fort Smith*,

207 Ark. 694, 182 S.W.2d 683 (1944).

We cannot say the trial court's finding that the Center's property is exempt was clearly erroneous and the judgment is affirmed.