Bruce SLOAN v. VOLUNTARY AMBULANCE SERVICE,
Benton County, and Fred S. James & Co.

CA 91-123                                    826 S.W.2d 296

Court of Appeals of Arkansas
Division II
Opinion delivered March 11, 1992
[Rehearing denied April 8, 1992.]

*Jay N. Tolley*, for appellant.

*Stephen A. Geigle*, for appellee Voluntary Ambulance Service.

*Bassett Law Firm*, by: *Curtis L. Nebben*, for appellee Benton County.

MELVIN MAYFIELD, Judge. This is an appeal from a decision of the Workers' Compensation Commission which held that appellant was not entitled to benefits under the Arkansas Workers' Compensation Act. We affirm.

In 1985 the Benton County Quorum Court established the Northeast Benton County Emergency Medical Service District (hereinafter EMSD) to provide emergency medical services to the residents of Benton County. Voluntary Ambulance Service (hereinafter VAS) was hired to provide the required medical services. Appellant, Bruce Sloan, worked as a volunteer emergency medical technician for VAS. It is undisputed that he had no regular hours and received no pay; his regular, full-time job was with the USDA inspecting meat.

On May 15, 1987, VAS held a fund-raiser at which its employees played the volunteer fire department employees in a volleyball match. During one of the games appellant received an injury to his ankle and was unable to return to work with the USDA until the following January. He filed this claim for workers' compensation benefits seeking medical expenses, temporary total disability, permanent partial disability and attorneys' fees. The claim was controverted in its entirety.

Although the administrative law judge held that appellant was an employee of VAS, he also held that VAS was a not-for-

profit corporation and was therefore exempt from liability under the workers' compensation law by the exception set out in Ark. Code Ann. § 11-9-102(3)(A)(iii) (1987), "Institutions maintained and operated wholly as public charities." He also held that both VAS and Benton County were exempt from the Workers' Compensation Act under Ark. Code Ann. §§ 21-13-101 — 21-13-111 (1987), "State and local government volunteers." He did not address appellant's claim that in the case of an uninsured subcontractor, the primary contractor, which appellant contended was Benton County, was liable. The full Commission affirmed and adopted the decision of the law judge.

On appeal appellant first argues that the Commission erred in finding that VAS was exempt from the mandates of the Arkansas Workers' Compensation Act under Ark. Code Ann. § 11-9-102(3)(A)(iii). That statute provides in pertinent part:

> (3) "Employment" means:
>
> (A) Every employment carried on in the state in which three (3) or more employees are regularly employed by the same employer in the course of business, except:
>
> . . . .
>
> (iii) Institutions maintained and operated wholly as public charities.

In affirming the decision of the law judge, the Commission relied upon the criteria set out in *Marion Hospital Ass'n* v. *Lanphier*, 15 Ark. App. 14, 688 S.W.2d 322 (1985), where we said:

> In its decision holding that appellant was not within the exception to employment contained in Ark. Stat. Ann. § 81-1302(c)(1) [now Ark. Code Ann. § 11-9-102 (1987)], the Commission listed the following factors it believed should be followed in determining whether or not a particular hospital is an institution "maintained and operated wholly as" a public charity:
>
> (1) Do the articles of incorporation provide that the purpose of the hospital is charitable in nature?

(2)    Is the corporation maintained for the private gain, profit or advantage of its organizers, officers or owners either directly or indirectly?

(3)    Does the hospital have capital stock or does it have provisions for distributing dividends or making a profit?

(4)    Does the hospital derive its funds from public and private charity as well as those who are able to pay?

(5)    Do all 'profits' go toward maintaining the hospital and extending and enlarging its charity?

(6)    Is the hospital open to all who are not pecuniarily able?

(7)    Are those patients who are unable to pay received into the hospital without charge, without discrimination on account of race, creed or color and are they given the same care as those who are able to pay?

(8)    Is the hospital exempt from the payment of both state and federal taxes?

15 Ark. App. at 16.

Appellant concedes that the articles of incorporation of VAS state that it is a not-for-profit corporation, but contends that "the fact that an entity says it is 'charitable in nature' should be given little if no weight by a reviewing court." Appellant then argues that VAS fails to meet factor number four because it does not derive all its funds from public and private charity. On that point there was evidence that, pursuant to the ordinance which created the Northeast Benton County Emergency Medical Service District, VAS was partially funded by a $15.00 assessment on the personal property of each household in the district, and a 10% penalty was assessed if any household failed to pay the EMSD fee when due. Appellant admits that VAS derives some of its funds from voluntary contributions and fund raising events. However, he contends that because of the $15.00 fee charged each household in the county, which is *not* voluntary, VAS does not derive all

of its funds from public or private charity. Appellant also argues that VAS fails to meet factor number seven because those people who are unable to pay the $15.00 assessment are penalized 10% and thus are clearly "not 'given the same care as those who are able to pay.'"

In reply, VAS points out that in the *Marion Hospital* case the court's primary reliance was upon such factors as the hospital's exemption from state and federal taxes and its operation so that none of the profits were distributed to the incorporators or officers but were funneled back into maintaining the hospital and enlarging its charity. VAS also points to the Commission's decision which stated:

> VAS is a nonprofit corporation under the laws of Arkansas and is organized exclusively for charitable, religious, educational and scientific purposes. The articles of incorporation provide that in the event of dissolution, all property of VAS is to be distributed exclusively for charitable purposes to worthy nonprofit organizations. VAS derives its funds from donations, fund raising events, a $15.00 assessment from each household within the emergency medical services district, and payments for services actually rendered. VAS is exempt from liability for state and federal taxes. All income or profit is used exclusively for the payment of costs, maintenance, and the enlargement of its charity. VAS provides its services to anyone within or without the emergency medical services district, regardless of race, creed, color or ability to pay. Based on these facts, we find that VAS is immune from liability for claimant's injury under Ark. Code Ann. § 11-9-102(3)(A)(iii).

We do not think the fees paid to VAS by EMSD prevents, as a matter of law, VAS from being an institution maintained and operated "wholly" as a public charity under the *Marion Hospital* decision; and it is our conclusion that there is substantial evidence to support the facts found by the Commission and its decision that VAS was exempt from liability under the workers' compensation law because of the exception provided by Ark. Code Ann. § 11-9-102(3)(A)(iii) (1987).

Appellant's second argument is that he is entitled to compen-

sation from Benton County pursuant to the subcontractor-prime contractor statute, and his third argument is that the Commission erred in not considering this argument.

Ark. Code Ann. § 11-9-402(a) (1987) provides:

> Where a subcontractor fails to secure compensation required by the chapter, the prime contractor shall be liable for compensation to the employees of the subcontractor.

Appellant claims Benton County is the prime contractor in this case because it created the Northeast Benton County Emergency Service District and assessed each household within the district $15.00 a year and VAS is the subcontractor because it was hired by Benton County to provide the medical services. Appellant argues that if we find that appellee VAS falls within the confines of the public charity exemption, then Benton County and the Fred S. James & Company, Inc., its insurance carrier, should be liable as the prime contractor. He argues that to hold otherwise would be contrary to public policy. In support of this argument, appellant relies on *Hobbs-Western Co. v. Craig*, 209 Ark. 630, 192 S.W.2d 116 (1946), where the Arkansas Supreme Court held:

> In *Schneider on Workmen's Compensation*, Permanent edition, Text Volume II, page 176, in commenting on the subcontractor provisions in the Workmen's Compensation Laws of the various states, this is stated:
>
> > "The apparent legislative purpose of constituting the principal contractor a statutory employer is to prevent evasion of the act; to protect the employees of subcontractors who are not financially responsible; to induce all employers to carry insurance; or to make the principal contractor a guarantor of the personal injury obligations of the subcontractor. . . ."

209 Ark. at 636. Appellant argues that because the law judge found that the employee-employer relationship existed between the appellant and appellee VAS and it cannot "be seriously disputed that appellant's injury arose out of and in the course of that employment relationship," it is then only necessary to show

that appellee Benton County was the prime contractor and appellee VAS was the subcontractor.

In the first place, we do not agree with appellant's assertion that it cannot "be seriously disputed that appellant's injury arose out of and in the course of that employment relationship." The appellant admitted he was an unpaid volunteer and had no regular hours during which he was on call to the VAS. He testified that before his injury he had been on only three calls, had been on none since, and that his presence at and participation in the volleyball game was purely voluntary. In his opinion, which was affirmed and adopted by the Commission, the administrative law judge stated:

> [T]he claimant failed to prove by the greater weight of credible evidence that he was in the course of his employment at the time that he was injured and that his injuries arose out of his employment. Being present at and participating in a fund raising event is not the same as being required to be present and to participate in a fund raising event.

Since appellant did not appeal this finding of the Commission it could be regarded as dispositive of the case. However, on the merits of the prime contractor-subcontractor issue, we look to *Bailey v. Simmons*, 6 Ark. App. 193, 639 S.W.2d 526 (1982), where the court said:

> The Supreme Court in *Hollingsworth & Rockwood Ins. v. Evans*, 255 Ark. 387, 500 S.W.2d 382 (1973) recognized the distinction between a subcontractor and an independent contractor:
>
> > There is, of course, a considerable difference between a subcontractor and and independent contractor. In *Black's Law Dictionary* a subcontractor is defined as:
> >
> > "One who takes portion of a contract from principal contractor or another subcontractor. *** One who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance."

In *Gaydos* v. *Packanack Wood Dev., Co.*, 166 A.2d 182, at page 184, the New Jersey Court defined a subcontractor in a workmen's compensation case as follows:

"A subcontractor is one who enters into a contract with a person for the performance of work which such person has already contracted to perform. In other words, subcontracting is merely 'farming out' to others all or part of work contracted to be performed by the original contractor."

6 Ark. App. at 196. The holding of *Bailey* v. *Simmons* affirmed a finding of the Commission that the appellees in that case were not contractually bound to any third person in connection with the work being done by appellants.

In the instant case, Benton County maintains that VAS was not a subcontractor because Benton County had no contractual obligation to provide ambulance service to its residents. It points to the ordinance as evidence that it was under no contractual obligation to furnish ambulance services to the residents of the district. The ordinance which established the emergency medical services district provides in part:

WHEREAS, Ark. Stat. § 82-3411 states that the Quorum Court of any county, upon petition of ten percent (10%) of the electors of the county or any designated area of the county, may, by ordinance establish a system to provide emergency medical services to the residents of Benton County.

. . . .

NOW THEREFORE, be it enacted by the Quorum Court of the County of Benton, State of Arkansas.

ARTICLE I. ESTABLISHMENT. There is hereby established pursuant to Ark. Stat. § 82-3410 — § 82-3420 an emergency medical service district known as Northeast Benton County Emergency Medical Service District.

. . . .

ARTICLE IX. REFERENDUM AND EFFEC-
TIVE DATE. This Ordinance shall not be in effect
until approved by a majority of the qualified voters in the
EMSD at an election as set forth in Ark. Stat. § 17-4003,
and Ark. Stat. § 17-4011.

■■ We think it is undisputed factually that the citizens
of the northeast portion of Benton County *assessed* a tax against
themselves in order to secure dependable emergency ambulance
service, and the county only served as a conduit to collect the tax
and turn it over to VAS on an as-needed basis. Therefore, we
cannot agree with appellant's argument that the subcontractor-
prime contractor statute is factually involved in this case. Thus, it
was not necessary for the Commission to discuss that part of
appellant's argument which was based on this statute.

Finally, appellant argues that the full Commission erred in
finding that appellees are exempt from the requirements of the
workers' compensation law pertaining to "State and Local
Government Volunteers." However, we need not discuss this
point because we have held that appellant is not entitled to
compensation for other reasons which we have discussed.

Affirmed.

JENNINGS and ROGERS, JJ., agree.