Barry Lee FAIRCHILD *v.* Larry NORRIS, Acting Director,
Arkansas Department of Correction

93-975                                        876 S.W.2d 588

Supreme Court of Arkansas
Opinion delivered May 31, 1994
[Rehearing denied July 5, 1994.*]

*Herbert C. Rule III, Charles W. Baker, P.A. Hollingsworth,
Elaine R. Jones, Richard H. Burr & Steven W. Hawkins*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Olan W. Reeves*, Senior
Asst. Att'y Gen., for appellee.

---

*Hays and Newbern, JJ., would grant rehearing.

JACK HOLT, JR., Chief Justice. Appellant Barry Lee Fairchild was convicted in 1983 of the capital murder of Marjorie Mason and was sentenced to death. We affirmed his conviction. *Fairchild v. State*, 284 Ark. 289, 681 S.W.2d 380 (1984), *cert. denied* 471 U.S. 1111 (1985); *Fairchild v. State*, 286 Ark. 191, 690 S.W.2d 355 (1985). For some eight years following Fairchild's conviction, a number of proceedings occupied the attention of the United States District Court of the Eastern District of Arkansas and the Eighth Circuit Court of Appeals. *Fairchild v. Lockhart*, 675 F.Supp. 469 (E.D. Ark. 1987); *Fairchild v. Lockhart*, 857 F.2d 1204 (8th Cir. 1988), *cert. denied* 488 U.S. 1051 (1989); *Fairchild v. Lockhart*, 744 F.Supp. 1429 (E.D. Ark. 1989); *Fairchild v. Lockhart*, 900 F.2d 1292 (8th Cir. 1990), *cert. denied* 497 U.S. 1052 (1990); *Fairchild v. Lockhart*, 979 F.2d 636 (8th Cir. 1992), *cert. denied* ___ U.S. ___ (1993).

On June 30, 1993, Fairchild unsuccessfully petitioned the Jefferson County Circuit Court for a writ of habeas corpus, or in the alternative, for a declaratory judgment pursuant to Ark. Code § 16-111-101, *et seq.*, the central issue being whether or not, under the state and federal constitutions, petitioner is ineligible for the death penalty, given that Act 420 of 1993, a newly passed state statute, prohibits the execution of the mentally retarded. The record of trial contains a history of prior proceedings, including a survey of Arkansans' opinions on capital punishment; transcripts of Fairchild's Pulaski County Special School District records, both elementary and high school; forensic and intellectual evaluations; an evaluation report from the Johnson Center for Psychological Testing; together with extensive briefs in support of the habeas corpus petition. Based on these materials, the trial court, on July 28, 1993, denied the petition for writ of habeas corpus with a further finding that the passage of Act 420 of 1993 affords this petitioner "no basis for his relief" and "that a hearing is unnecessary as [to] his petition for declaratory judgment," and as such, it was denied.

Subsequently, Fairchild filed a notice of appeal to this court in the Jefferson County Circuit Court from the order denying him declaratory relief. On September 7, 1993, the record of the Jefferson County Circuit Court proceeding was filed with the Arkansas Supreme Court Clerk. At this time, Fairchild was scheduled for execution on September 22, 1993.

On September 10, 1993, prior to the filing of the briefs in this appeal, Fairchild filed a motion for stay of execution with this court, predicated on the central issue of his appeal: whether or not, under the state and federal constitutions, he was ineligible for the death penalty in light of Act 420's prohibition of the execution of the mentally retarded. Fairchild supported this motion with essentially the same briefs and materials provided to the trial court in his petition for declaratory judgment.

During the pendency of this motion, application was made by ARC of Arkansas (formerly, the Association for Retarded Citizens of Arkansas) and individual citizens, to file an amici curiae brief in support of Fairchild's position, which was granted. Following submission of complete briefs on all critical issues from the parties and an oral argument on September 19, 1993, we denied the motion for stay of execution. *Fairchild* v. *Norris*, 314 Ark. 221, 861 S.W.2d 111 (1993). In our per curiam opinion, dated September 20, 1993, we noted that United States District Judge G. Thomas Eisele in *Fairchild* v. *Lockhart*, 744 F. Supp. 1461 (1989), after considering a voluminous amount of evidence presented by both parties bearing on Fairchild's mental history, had ruled in a seventy-eight-page opinion that Fairchild was not retarded. We also recognized that the United States Eighth Circuit Court of Appeals had reviewed Judge Eisele's findings and affirmed them in *Fairchild* v. *Lockhart*, 979 F.2d 636 (8th Cir. 1992), cert. denied 497 U.S. 1052 (1990). As a result, we held that Fairchild could not reassert the issue of his mental retardation and was precluded from doing so under the doctrine of collateral estoppel. *Fairchild* v. *Norris*, 314 Ark. 221, 861 S.W.2d 111 (1993).

Fairchild did not challenge the court's decision by petitioning the Supreme Court for writ of certiorari. Instead, he chose to file a petition for writ of habeas corpus with the United States District Court. On September 22, 1993, two days after we handed down our per curiam, Judge Eisele granted Fairchild federal habeas relief, directing that Fairchild's sentence be changed to life in prison without parole. The District Court found that the evidence presently against Fairchild at trial was legally insufficient to justify the death penalty. *Fairchild* v. *Norris*, No. PB-85-262 (E.D. Ark. September 22, 1993) (see also Addendum to Mem. Op., E.D. Ark. September 24, 1993). On April 8, 1994,

the United States Court of Appeals for the Eighth Circuit reversed the District Court's holding and remanded it with directions to dismiss Fairchild's petition, explaining that Fairchild had not proven by clear and convincing evidence that, but for a constitutional error, no reasonable juror could have found him eligible for the death penalty. Instead, the Court of Appeals explained, the evidence at trial was sufficient for a reasonable juror to find that Fairchild was a major participant in the felonies and that he acted with reckless indifference to human life, resulting in Ms. Mason's death. *Fairchild* v. *Norris*, No. 93-3325EA (8th Cir. April 8, 1994).

Following his unsuccessful attempt to obtain a stay of execution from our court in late September of 1993, Fairchild has attempted to continue his appeal from the Jefferson County Circuit Court's decision by reasserting the same issues he presented earlier in his motion to stay execution. Fairchild's briefs, as well as recent oral arguments in support of the briefs by his counsel, are, with little exception, the same arguments presented in his quest for a stay of execution. These include his contention that, in light of the passage of Act 420 of 1993 ("An Act to Prohibit the Sentencing of a Mentally Retarded Defendant to Death"), his execution would: (1) violate state and federal guarantees against the imposition of cruel and unusual punishment; (2) render a disproportionate sentence as between him and other retarded individuals; and (3) violate his due process rights. He also argues that even though the United States District Court has held that he is not retarded, collateral estoppel does not apply, and he is entitled to an evidentiary hearing if there is any dispute as to whether he meets the statutory presumption established by Act 420.

As we noted earlier, the oral arguments of the parties and the briefs in support of the motion for stay of execution and of this request for relief are the same — even the attachments to the briefs are identical. Thus, it is obvious that Fairchild has twice presented the same issues to this court in this appeal: first, through his motion for stay and, now, in this proceeding.

When Fairchild requested a stay of execution after lodging his appeal in this court on September 7, 1993, he was well aware that his appeal would be effectively ended if this court refused

that stay request. As previously mentioned, Fairchild's execution was scheduled for 9:00 p.m. on September 22, 1993, and therefore, this court expedited the filing of briefs and then scheduled oral argument which was heard on September 27, 1993. Realizing the practical finality of his appeal which would result if this court denied his stay request, Fairchild was permitted, without objection, to argue all issues he had raised before the Jefferson County Circuit Court. Fairchild now tries to reassert these same issues in this same appeal. In effect, Fairchild's present reassertions amount to a belated petition for rehearing on this court's September 20, 1993, per curiam decision.

■■ For these reasons, we apply the doctrine of law of the case and consider these issues no further. We have recently held that the doctrine of law of the case prevents an issue raised in a prior appeal from being raised in a subsequent appeal unless the evidence materially varies between the two appeals. *Henderson* v. *State*, 311 Ark. 398, 844 S.W.2d 360 (1993). *See Mauppin* v. *State*, 314 Ark. 566, 865 S.W.2d 70 (1993); *see also Housing Authority of NLR* v. *Green*, 241 Ark. 47, 406 S.W.2d 139 (1966). However, the doctrine of law of the case is not limited to issues raised in prior appeals as the doctrine was developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit which is the situation we have before us. *See* 18 Wright, Miller and Cooper, *Federal Practice & Procedure* §4478 (1981). As stated by Justice Holmes in *Messenger* v. *Anderson*, 225 U.S. 436 (1912), the law of the case "merely expresses the practice of courts generally to refuse to reopen what has been decided." *Messenger*, 225 U.S. at 444. This doctrine applies to issues of constitutional law. *Bedell* v. *State*, 260 Ark. 401, 541 S.W.2d 297 (1976), *cert. denied* 430 U.S. 931 (1977). Here, there was no material variance between these two proceedings apart from the fact that one was labeled "Motion for Stay of Execution" and the other "Appeal." Both involved the same facts and the same constitutional issues.

■ Since Fairchild requested no timely rehearing concerning the opinion, all legal issues were resolved in our holdings of September 20, 1993, in which we concluded that Fairchild could not reassert the issue of his mental retardation. It is the law of the case. *See Fairchild* v. *Norris*, 314 Ark. 221, 861 S.W.2d

111 (1993). Indeed, prior to our holding, the United States District Court ruled that "Mr. Fairchild is not now retarded and was not in 1983." *Fairchild* v. *Lockhart*, 744 F.Supp. at 1461.

Our present holding does not run afoul of Act 420 of 1993, codified at Ark. Code Ann. § 5-4-618 (Repl. 1993), which prohibits the execution of the mentally retarded, as the question of Fairchild's mental retardation was addressed and resolved by the federal courts before the statutory prohibition was enacted. The mere passage of Act 420 does not breathe new life into this issue. It does not require a third resolution, as urged by the dissenting opinion in this case.

There is no basis for Fairchild's present application for relief.

Affirmed.

BROWN, J., concurs.

HAYS and NEWBERN, JJ., dissent.

ROBERT L. BROWN, Justice, concurring. I concur with the majority opinion but write to emphasize that the appellant, Barry Lee Fairchild, is not mentally retarded. The United States District Court so found after a full hearing, and the Eighth Circuit Court of Appeals affirmed. *Fairchild* v. *Lockhart*, 744 F.Supp. 1429 (1989), *aff'd* 900 F.2d 1292 (8th Cir. 1990), *cert. denied* 497 U.S. 1052 (1990). The public policy of this State which is embodied in Act 420 of 1993 clearly prohibits the execution of the mentally retarded. But because Fairchild has been found not to be retarded, that public policy is not at issue.

The bulk of the United States District Court's 1989 opinion, which is 78 pages in length, is concerned with Fairchild's IQ and his claim of mental retardation. Witness these statements and findings by that court which are the result of an exhaustive analysis:

On the basis of all of the evidence and the totality of the circumstances including:

1. A review of the state court record and the transcript of the testimony of Mr. Fairchild and the other witnesses in the state court proceedings;

2. A review of the transcripts of all of the

appearances and hearings in this Court with particular focus on Mr. Fairchild's performance as a witness and his awareness of the issues and his communicative skills;

3. The views and opinions of his attorneys and others who have had close association with Mr. Fairchild, as disclosed in the record;

4. A careful review of the factual reports and also the opinions of those who examined or observed Mr. Fairchild when he was at the State Hospital in 1974 and in 1983, and at the Federal Hospital in Springfield in 1986;

5. A careful consideration and evaluation of the documentary evidence, testimony and the opinions of Dr. George Baroff, Dr. Judy White Johnson, Ms. Ruth Luckasson, Dr. Theodore Blau, Dr. Pritchard, Dr. Rosendale, Mr. Dennis Keyes and Dr. Donald Butts and the other witnesses who testified in person or by deposition at the hearing which commenced on Thursday afternoon, March 16, 1989, and ended Tuesday evening, March 21, 1989;

The Court finds and concludes that Mr. Fairchild was not only capable of but did, in fact, voluntarily, knowingly, and intelligently waive his *Miranda* rights before confessing his involvement in the robbery, rape, and murder of Ms. Mason on March 5, 1983.

And the Court further finds and concludes that petitioner has not sustained his contention that the State failed to provide him with a professionally adequate evaluation of his mental condition before his 1983 state court trial.

*The Court can also state at this time that it is convinced, and so finds, that Mr. Fairchild is not now retarded and was not in 1983. It is also convinced, and so finds, that in March of 1983, he understood not only the language and terminology of the Miranda warnings but also the practical meaning and effect thereof.*

The Court's own judgment as to the mental status of

Mr. Fairchild based upon all of the evidence and based upon observing him testify and communicating in court on different occasions, upon viewing and reviewing the video-taped confessions, and upon reading transcripts of his testimony in the state court proceedings and listening to witnesses — expert and lay — describe his actions and conduct was, and continues to be, that he would fall in the "dull, below normal" category but that he is not "retarded." Because of the circumstances under which the various "IQ" tests were given, probably the Revised Beta Examination conducted by Dr. Richard D'Andrea at Springfield is the least contaminated by by (sic) motivational or "secondary gain" phenomenon. Although by hindsight one might wish that a WAIS-R or Revised Stanford-Binet test had been administered under those optimal motivational circumstances, the Court is nevertheless convinced that the 87 IQ received by Mr. Fairchild on the Revised Beta is closer by far to an accurate IQ reading on Mr. Fairchild than either the 1989 WAIS-R or the Stanford-Binet test results. *It is the Court's opinion that the best tests, administered under optimal circumstances, would yield an IQ for Mr. Fairchild somewhere between 75 and 87.*

744 F.Supp. at 1460-1461. (Emphasis added.) The rebuttable presumption for mental retardation under Act 420 is an IQ of 65 or below.

The Eighth Circuit Court of Appeals affirmed the absence of retardation in Fairchild with this straightforward assessment:

We affirm the District Court's finding that Fairchild was not retarded in 1983, and is not retarded now. We cannot say this conclusion was clearly erroneous. On the contrary, the evidence here was mixed. The appellant has undergone a vast array of tests to ascertain his competence. The scores on those tests are contradictory; with 70 serving as the threshold of retardation, his IQ has been scored as low as 60 and as high as 87. And even if all the tests agreed, that would not settle the question. Being retarded means more than scoring low on IQ tests. It also means functioning ineffectively in society. The District Court correctly noted that here the evidence weighs against finding that

the appellant is retarded. His interactions with others undermine such a claim. For example, the trial court allowed Fairchild to act as co-counsel at his trial. T. 73, 397. On the basis of his dealings with Fairchild, his habeas lawyer, Mr. Hall, noted his surprise upon discovering that some test scores indicated the appellant was retarded.

900 F.2d at 1295.

These decisions resolve the issue for me. Fairchild's claim of retardation was clearly essential to his federal habeas corpus petition and was fully examined and explored prior to the enactment of Act 420. It was found to be wanting. There is no basis now for a redundant exploration of this issue.

DAVID NEWBERN, Justice, dissenting. The State of Arkansas is on the verge of putting Barry Lee Fairchild to death without determining for itself whether he is, and was at the time the murder of which he was convicted, retarded. That is so despite the newly declared public policy of the State: "No defendant with mental retardation at the time of committing capital murder shall be sentenced to death." Ark. Code Ann. § 5-4-618(b) (Repl. 1993).

Perhaps as a result of its disgust with the delays resulting from the numerous motions and appeals filed by prisoners, especially those on death row, here and in federal courts, the majority of the members of this Court are improperly making a technical exit to avoid facing an important issue. It was error to have denied the stay of execution sought in *Fairchild* v. *Norris*, 314 Ark. 221, 861 S.W.2d 111 (1993), on the basis of collateral estoppel. Now the majority absolves itself of that error with a questionable application of the law of the case doctrine to avoid addressing the merits of Mr. Fairchild's appeal. I must dissent.

To its credit, the majority opinion is not shrill, yet the frustration we sometimes feel as the result of the seemingly interminable petitions and appeals of criminal defendants shows in the euphemistic recitation of the "number of proceedings" which have "occupied the attention" of the federal courts. We should never allow that frustration to trump the law or even to color our decisions.

The majority of my colleagues are unwilling to address the merits of Mr. Fairchild's appeal because they previously refused to do so when we considered his motion for stay of execution in *Fairchild* v. *Norris, supra.* That decision was incorrect. The majority erroneously applied the doctrine of collateral estoppel to determine that we were barred from revisiting Judge Eisele's finding that Mr. Fairchild is not mentally retarded.

It is enough to say, without repeating the entire dissenting opinion in *Fairchild* v. *Norris, supra,* that the issue before the United States District Court when Judge Eisele rendered his finding was whether Mr. Fairchild was capable of waiving the rights accorded him by the *Miranda* rule. As a retarded person may waive those rights, the question whether Mr. Fairchild was retarded was unnecessary to Judge Eisele's decision. For collateral estoppel to preclude a court from addressing an issue, a finding on that issue must have been made in a previous decision, and that finding must have been necessary to that decision. Neither the majority as a group nor any member of it has responded, satisfactorily or otherwise, to that criticism of its decision.

The majority now applies the law of the case doctrine to avoid, once again, addressing Mr. Fairchild's appeal, including his citation of the new mental retardation statute, on its merits. Application of law of the case in this appeal is tenuous at best. The majority cites no case to support its proposition that a conclusion, particularly a procedural one like application of collateral estoppel, reached in the process of deciding a motion, can or should be considered law of the case.

Even if there were authority for applying the doctrine in a situation such as this, it should not be considered to be binding upon us. The majority opinion quotes Mr. Justice Holmes's statement in *Messenger* v. *Anderson,* 225 U.S. 436 (1912), that the law of the case "merely expresses the practice of courts generally to refuse to reopen what has been decided." Mr. Justice Holmes's remark was slightly longer. Mr. Justice Holmes said the doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, *not a limit to their power.*" 225 U.S. at 444 (emphasis added).

Contrasting the doctrine of law of the case and *res judicata,*

the Supreme Court has also said, "there is a difference between such adherence [to law of the case] and *res judicata*; one directs discretion, the other supersedes it and compels judgment. In other words, in one it is a question of power, in the other of submission." *Southern Ry. Co.* v. *Clift*, 260 U.S. 316 at 319 (1922).

By its enactment of § 5-4-618(b), long after the federal court ruled on whether Mr. Fairchild had the capacity to waive his *Miranda* rights, the Arkansas General Assembly determined that mentally retarded persons who commit capital murder should not be executed. It defined "mental retardation" in § 5-4-618(a)(1) and created, in § 5-4-618(a)(2), a rebuttable presumption that a person with an intelligence quotient of 65 or below suffers from mental retardation.

Here, as was the Georgia Supreme Court in *Fleming* v. *Zant*, 386 S.E.2d 339 (Ga. 1989), we are faced with a significant change in the law which may have a profound effect on our interpretation of the "cruel and unusual punishment" proscription in Ark. Const. art. 2, § 9. The majority opinion sluffs it off by saying "The mere passage of Act 420 does not breathe new life into this issue. It does not require a third resolution . . . ." We have not addressed the issue, much less resolved it. The majority thus dodges a question of life or death by deferring to the decision of a federal court which is not binding upon us and which was made before the statute was enacted.

Mr. Fairchild seeks to show he falls within the protection of art. 2, § 9, on the basis of the new law. As the Georgia Supreme Court noted in the *Fleming* case, the matter of proportionality is implicated. Mr. Fairchild's counsel, by presenting the materials mentioned in the majority opinion, make a strong argument that there is a lot of evidence that Mr. Fairchild is "retarded," as that term is defined in § 5-4-618, and has been since childhood.

We have the power to decide, on the merits, whether Mr. Fairchild should have a hearing to determine whether he is retarded. We should do so, and we should grant the hearing for the reasons stated in my dissenting opinion, joined by Justice Hays, in *Fairchild* v. *Norris, supra.*

If counsel are correct, Barry Lee Fairchild may well not be the first retarded person to have been executed in Arkansas, but

he surely will be the last. Now that the law has changed, we should not let that happen on the basis of an erroneous application of collateral estoppel, coupled with an insupportable and unnecessary application of law of the case. Our failure to address the merits of Mr. Fairchild's appeal on the majority's application of law of the case is at best cavalier and at worst irresponsible.

I respectfully dissent.

HAYS, J., joins in this dissent.