Jim PLEDGER, Director of the Department of Finance and Administration *v.* NORITSU AMERICA CORPORATION

94-1289                                          896 S.W.2d 595

Supreme Court of Arkansas
Opinion delivered May 1, 1995
[Rehearing denied June 12, 1995.*]

*Supplemental opinion issued June 12, 1995.

*Beth B. Carson*, Revenue Legal Counsel, for appellant.

*Friday, Eldredge & Clark*, by: *William Thomas Baxter* and *Barry E. Coplin*, for appellee.

DAVID NEWBERN, Justice. The Appellee, Noritsu America Corporation (Noritsu), sells automated equipment, or "minilabs," purchased and used by businesses which process film. The Department of Finance and Administration (DF&A) assessed a use tax against Noritsu for its 1983 through 1988 Arkansas sales. The tax was paid under protest. The assessment was upheld in an administrative proceeding, and Noritsu sued to recover the tax and interest paid. The Chancellor agreed with Noritsu's contention that the equipment falls within the manufacturing exemption from use tax found in Ark. Code Ann. § 26-53-114 (Supp. 1993). We reverse the decision because the equipment is not used to produce "articles of commerce."

We review tax exemption cases *de novo* on the record, although we do not reverse the Chancellor's factual findings unless they are clearly erroneous. *Martin v. Riverside Furniture Corp.*, 292 Ark. 399, 730 S.W.2d 483 (1987). There is no factual dispute in this case. It was tried largely on stipulations. The question is whether, given the facts before the Chancellor, it was, as a matter of law, error to hold Noritsu entitled to the exemption. The taxpayer must establish an entitlement to an exemption from taxation beyond a reasonable doubt. *Pledger v. C.B. Form Co.*, 316 Ark. 22, 871 S.W.2d 333 (1994). Tax exemption provisions must be strictly construed against exemption, and if there is any doubt concerning its application, the exemption must

be denied. *Martin* v. *Riverside Furniture Corp., supra.*

Section 26-53-114(a)(1)(A) exempts from use tax "Machinery and equipment used directly in producing, manufacturing, fabricating, assembling, processing, finishing, or packaging of articles of commerce . . . ." Prior to 1983, Ark. Stat. Ann. § 84-1904(r)(2)(E), the predecessor of § 26-53-114(b), defined the words "manufacturing" and "processing" for purposes of the statute to mean, "those operations commonly understood within their ordinary meaning." Following that general statutory guidance was a list of specific exemptions including items such as "mining, quarrying, refining, extracting oil and gas, cotton ginning," etc., but nothing about photographs or printing.

■ In *Western Paper Co.* v. *Qualls*, 272 Ark. 466, 615 S.W.2d 369 (1981), exemption was urged as to equipment used for commercial printing of stationery, wedding and business announcements, flyers, books, and business cards. We observed that, "in the ordinary use of the term we do not think of printing, photography, and binding as manufacturing." We concluded our opinion as follows:

> Commercial printing has certainly undergone technological changes over the years, but the final product remains the same — images on paper. The printer starts with manufactured paper and ink and through the use of manufactured machinery and equipment produces images on paper, a product which generally has no commercial market value other than to the individual for whom the commercial printer performed the service. "Ordinarily, we think of a manufactured article as something to be placed on the market for retail to the general public in the usual course of business." *Morely* v. *E.E. Barber Construction Co.*, 220 Ark. 485, 248 S.W.2d 689 (1952).

Subsequent to the decision in the *Western Paper Co.* case, the General Assembly amended § 26-53-114(b) to include in the list of specific exemptions "the services of overprinting and photographic processes incidental to printing." Noritsu contends the equipment it sells falls within the exemption because it is the same equipment as is used to process photographs "incidental to printing." It does not contend photographs produced with the equipment sold by it are indeed processed "incidental to printing."

In *C & C Machinery, Inc.* v. *Ragland*, 278 Ark. 629, 648 S.W.2d 61 (1983), we affirmed denial of exemption with respect to equipment purchased by a machine shop operator who used the equipment to convert unprocessed metal into finished products. We said:

> While we are persuaded that appellant's milling operation changes raw metal into a finished product, we are not persuaded that the finished product is an "article of commerce," as required under the exemption provision of the act . . . . The Chancellor was justified in finding under the evidence that appellant does not maintain a stock or inventory of finished articles for sale to the general public, rather, it produces custom items prepared for specific customers in response to special orders. Its products are prepared to customer specifications and are not readily marketable to the general public.

In support of our conclusion, we cited the *Western Paper Co.* case and the language about "retail to the general public." Although our focus in the *Western Paper Co.* case was on whether printing was manufacturing, the *C & C Machinery, Inc.* case has made it clear that our language in the *Western Paper Co.* case had implications with respect to whether custom printing products were "articles of commerce."

While we might agree with Noritsu's contention that its equipment is like that used "incidental to printing," the General Assembly has done nothing to alter the requirement that, to be exempt, manufacturing or processing equipment, regardless how it is defined, must be used to manufacture or process "articles of commerce" as stated in subsection § 26-53-114(a). Just as it was not shown in the *C & C Machinery, Inc.*, case or in the *Western Paper Co.* case, it has not been shown here that the products processed by the equipment in question are "placed on the market for retail to the general public in the usual course of business."

■ Our *de novo* review leads us to conclude Noritsu has not shown beyond a reasonable doubt that it is entitled to the exemption and a return of the tax and interest it has paid. This case is remanded for an order consistent with this opinion.

Reversed and remanded.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
### JUNE 12, 1995

1. APPEAL & ERROR — ISSUE WAS RAISED ON APPEAL — NO WAIVER FOUND. — Where the appellant abstracted testimony about the nature of the articles produced and then quoted language from cases making it clear that the items produced by photographic development equipment were not "articles of commerce," the issue was raised on appeal, and was properly addressed by the court.

2. APPEAL & ERROR — CHALLENGE ON THE MERITS MADE — NO EVIDENCE BEFORE COURT THAT THE WORK DONE BY THE MACHINES WAS ANYTHING OTHER THAN CUSTOM PHOTO FINISHING NOT RESULTING IN "ARTICLES OF COMMERCE" — REHEARING DENIED. — The appellee's argument that the abstract inclued evidence that the appellee's machines produced article of commerce was meritless where the deposition testimony revealed no evidence that the work done by the machines was anything other than a custom photo finishing not resulting in "articles of commerce"; rehearing was denied.

Petition for Rehearing; denied.

*Department of Finance & Administration*, by: *Beth B. Carson*, Acting Chief Counsel, for appellant.

*Friday, Eldredge & Clark*, by: *Barry E. Coplin, Robert S. Shafer* and *Allison Graves*, for appellee.

DAVID NEWBERN, Justice. Noritsu America Corporation has petitioned for rehearing contending we should not have considered whether the photographic development equipment produced "articles of commerce," as that was not argued by Mr. Pledger on appeal. The rehearing petition must be denied as we conclude the argument was before us.

*Western Paper Co.* v. *Qualls*, 272 Ark. 466, 615 S.W.2d 369 (1981), is a primary citation presented in Mr. Pledger's initial brief. In his argument he quoted the *Western Paper Co.* case opinion, in part, as follows: "'Ordinarily, we think of a manufactured article as something to be placed on the market for retail to the general public in the usual course of business.'

*Morely* v. *E.E. Barber Construction Co.*, 220 Ark. 485, 248 S.W.2d 689 (1952). . . ." The argument contending that the photo processing equipment was not manufacturing equipment also

quoted the following from *Riggs* v. *Hot Springs*, 181 Ark. 377, 26 S.W.2d 70 (1930): "We think of a manufactured article as something to be placed on the market for retail to the general public in the usual course of business."

Although, as Noritsu points out, Mr. Pledger's brief did not cite Ark. Code Ann. § 26-53-114(a)(1)(A) which addresses the "articles of commerce" aspect of the manufacturing exemption, that concept was a subject of the *Western Paper Co.* case which, as noted above, was cited in the argument and relied upon. Section 26-53-114(a)(1)(A) provides the basic exemption for manufacturing equipment upon which Noritsu must rely. It must serve as the foundation of any argument for exemption for manufacturing equipment. Even if a fundamental part of that subsection had not been argued, we would have difficulty ignoring it in a case in which the issue is exemption pursuant to that law.

Noritsu cites *Cummings* v. *Boyles*, 242 Ark. 923, 415 S.W.2d 571 (1967), and *Ford* v. *Ford*, 270 Ark. 349, 605 S.W.2d 756 (Ark. App. 1980), for the proposition that an argument not made on appeal is waived. We cannot say there was a waiver here. By abstracting testimony about the nature of the articles produced and then quoting language from cases making it clear that such items are not "articles of commerce" as we have defined that term, the issue was raised. Noritsu could have responded in its brief but chose not to do so.

Finally, Noritsu mounts a challenge on the merits of the argument pointing out abstracted evidence that "in addition to negatives and photo prints, the Appellee's [Noritsu's] machines produce baseball cards, business cards, greeting cards, enlargements and mini-posters" and that they could produce 1,200 prints per hour. The reference to business cards, greeting cards, enlargements and mini-posters gave us no reason to suspect that evidence that the equipment was producing articles of commerce. The reference to baseball cards gave us pause until we reviewed the cited portion of Mr. Pledger's abstract. The deposition testimony to which reference is made on the "baseball cards" is as follows: "Equipment today is capable of producing baseball cards such as trading cards for little leaguers or photo business cards." We have no evidence before us showing that the work done by

the machines is anything other than custom photo finishing not resulting in "articles of commerce."

Rehearing denied.