# MILLER COUNTY, Arkansas *v.* OPPORTUNITIES, INC. d/b/a Meadowbrook Place

97-1498 971 S.W.2d 781

Supreme Court of Arkansas
Opinion delivered July 9, 1998

[Petition for rehearing denied September 10, 1998.]

*Autrey, Autrey & Stewart,* by: *Ned A. Stewart, Jr.,* for appellant.

*Dunn, Nutter Morgan & Shaw,* by: *Winford L. Dunn,* for appellee.

DAVID NEWBERN, Justice. The issue in this appeal is whether property owned and operated by the appellee, Opportunities, Inc., is entitled to exemption from *ad valorem* taxes imposed by the appellant, Miller County. The property consists of land upon which there is an apartment complex occupied by persons aged 55 and older. Exemption was denied by the Miller County Court. That decision was reversed on appeal to the Miller Circuit Court which held that the property falls within the exemption provided in Ark. Const. art. 16, § 5(b), *i.e.,* "Buildings and grounds . . . used exclusively for public charity . . . ." It was also held that prior rulings granting exemption with respect to the property in question barred reconsideration of the issue. We hold that the record does not demonstrate that the property is used exclusively for public charity and that the prior rulings to which the Circuit Court adverted have no *res judicata,* collateral estoppel, or law-of-the-case effect. We, therefore, reverse the decision.

### 1. Exemption

The burden on a party claiming a constitutional tax exemption is to prove entitlement beyond a reasonable doubt. *City of Fayetteville v. Phillips,* 306 Ark. 87, 811 S.W.2d 308 (1991). Tax exemption provisions must be strictly construed against exemption, and if there is any doubt, the exemption must be denied. *Pledger v. Noritsu America Corp.,* 320 Ark. 371, 896

S.W.2d 595 (1995). As in the *Pledger* case, there is no factual dispute here.

Patty Smith, the Director of Opportunities, Inc., testified that the formal criteria for admission to Meadowbrook Place include "financial resources to meet the monthly fee." There is nothing in the record to the contrary. Ms. Smith said that no one had been turned away from Meadowbrook Place due to inability to pay, and she had not been authorized by her board of directors to do so. She testified, however, that an applicant who has difficulty meeting the monthly fee covering rent, meals, utilities, and other services is counseled in an effort to find sources of funds to meet the fee. If sources cannot be found, the applicant is referred to another program. All Meadowbrook Place residents pay a monthly fee. The average fee is $650.00. There is nothing in the record to suggest that Opportunities, Inc., pays any part of any resident's monthly fee at Meadowbrook Place, although the organization subsidizes the operation to a certain extent and uses some of the Meadowbrook Place facilities in support of its other charitable activities.

In cases involving hospitals run by not-for-profit organizations, beginning with *Hot Springs School Dist. v. Sisters of Mercy,* 84 Ark. 497, 106 S.W. 954 (1907), we have held that the admission of paying patients does not destroy the tax-exempt status of the hospital property. *Sebastian Cnty. Bd. v. The Western Ark. Counseling and Guidance Ctr.,* 296 Ark. 207, 752 S.W.2d 755 (1988). In *Hot Springs School Dist. v. Sisters of Mercy, supra,* the Sisters of Mercy were operating a hospital and pharmacy dispensing care and medicine to paying and nonpaying patients. Those who could not pay were treated and received medicine free. Fees paid by the paying patients were devoted solely to helping pay for the treatment and medicine received by those who could not pay. We wrote: "The fact of receiving money from some of the patients does not, we think, at all impair the character of the charity, so long as the money thus received is devoted altogether to the charitable object which the institution is intended to further."

To qualify for the exemption, a hospital must be a place where no one may be refused services on account of inability to

pay, and where all profits from paying patients are applied to maintaining the hospital and extending and enlarging its charity. *Burgess v. Four States Memorial Hosp.*, 250 Ark. 485, 465 S.W.2d 693 (1971).

█ In the case now before us, we have evidence that Opportunities, Inc., has lost money on its operation of Meadowbrook Place, but we have no showing that any charitable activity is occurring there or that the fees paid by the residents are being devoted to a charitable purpose. Applying the hospital cases by analogy, Meadowbrook Place does not qualify for the exemption. Although it has not turned an applicant away due to inability to pay its fees, it is clear that its policy requires that the fees be paid and that an applicant *may be* refused if he or she is unable to pay. Although help is provided in finding sources for payment, payment is required.

### 2. Previous rulings

In addition to Ms. Smith's testimony, the Trial Court also considered three prior orders dealing with the immunity of Meadowbrook Place. A September 27, 1989 order, entitled "County Court Order," signed by the county judge, a circuit judge, and the county assessor, ordered that the 1988 taxes on Meadowbrook Place be waived based on the warranty deed which conveyed Meadowbrook Place and on information from the county assessor.

On June 18, 1990, a tort action was filed against Meadowbrook Place, and the Miller Circuit Court dismissed the action on the basis that Meadowbrook Place was a charitable institution entitled to charitable immunity.

On October 28, 1991, a hearing was held before the Miller Chancery Court based on a Petition for Tax Exemption by Opportunities, Inc. The Chancelor found that Opportunities, Inc., was a tax-exempt organization in its operation of Meadowbrook Place and removed Meadowbrook Place from the tax rolls. The Chancellor also ordered that the tax collector of Miller County not collect any taxes assessed on the property for prior years. On December 19, 1991, the Chancellor, after hearing the

motion of the prosecuting attorney, set aside the October 28 order and then set the matter for a hearing. There is no indication in the record of this case that a hearing was held.

In the case now before us, the Circuit Court, applying the doctrines of *res judicata*, collateral estoppel, equitable estoppel, and law of the case, held that further consideration of the issue of taxation of the Meadowbrook Place property was barred.

### a. Res judicata

■ The claim-preclusion facet of *res judicata* bars relitigation of a subsequent suit when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Griffin v. First National Bank*, 318 Ark. 848, 888 S.W.2d 306 (1994).

■ The September 27, 1989 order, signed by the county judge, a circuit judge, and the county assessor, is most unusual. It contains no reference to any proceedings upon which it was based. We hold it is not entitled to *res judicata* effect because it is not known which court, if any, rendered it. There is no indication that Miller County was a party to the order or to any proceedings giving rise to it. There is, indeed, no evidence that the order was the result of any kind of suit or that the suit was "fully contested."

■ The October 28, 1991 chancery order has no *res judicata* or other effect because it was set aside, apparently because the chancery court lacked jurisdiction. See Ark. Const. art. 7, § 28, which vests exclusive jurisdiction in the county courts with respect to all matters relating to county taxes.

■ The December 7, 1990 court order has no *res judicata* effect in this case because the underlying tort action did not involve the same claim or cause of action, and Miller County was neither a party nor in privity with any of the parties to the tort action.

### b. Collateral estoppel

■ The following elements must be shown in order to establish collateral estoppel: (1) the issue sought to be precluded must the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a final and valid judgment, and (4) the issue must have been essential to the judgment. *Hill v. State*, 331 Ark. 312, 962 S.W.2d 762 (1988).

■ The September 27, 1989 order does not bar a holding against Meadowbrook Place based on collateral estoppel because there is no indication that any issue was actually litigated, and there is some question as to whether the order constitutes a final and valid judgment.

■ The December 7, 1990 order does not bar a holding against Meadowbrook Place based on collateral estoppel because the issue in the two cases is not the same.

■ The October 28, 1991 order does not bar a holding against Meadowbrook based on collateral estoppel as the order was set aside.

### c. Law of the case

■ The doctrine of law of the case prevents an issue raised in a prior appeal from being raised in a subsequent appeal unless there is a material variance in the evidence before the court in each appeal. *Fairchild v. Norris*, 317 Ark. 166, 876 S.W.2d 588 (1994). The doctrine is, however, not limited to issues raised in prior appeals as it was developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. *Id.*

■ The September 27, 1989 order does not bar a holding against Meadowbrook based on law of the case because the order was not part of this lawsuit, and there is no indication that Miller County was a party in that suit.

▮ The December 7, 1990 order does not bar a holding against Meadowbrook based on law of the case because the tort action is not part of this lawsuit.

▮ The October 28, 1991 order does not bar a holding against Meadowbrook based on law of the case because the Chancellor set aside the order.

### d. Equitable estoppel

▮ As to the doctrine of equitable estoppel, we recognize four necessary elements: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his or her conduct be acted on or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the latter must be ignorant of the true facts; and (4) must rely on the former's conduct to his or her injury. *Foote's Dixie Dandy v. McHenry, Adm'r*, 270 Ark. 816, 607 S.W.2d 323 (1980).

Opportunities, Inc., argues that Miller County should be estopped from arguing that Opportunities, Inc., is not tax exempt based on the prior orders. Meadowbrook Place further argues that "the purpose and use of the property was discussed with the City of Texarkana, Arkansas, in securing the deed to the property and with officials of Miller County shown on the referenced orders finding the right to the tax exemption for charitable purposes of this property."

▮ There is no indication that Meadowbrook Place relied on actions or statements by an agent of Miller County. The September 27, 1989 order was signed by the tax assessor; however, it only stated that the 1988 taxes were waived. Ms. Smith did testify that Opportunities, Inc., discussed its intended use of Meadowbrook Place with the City of Texarkana, Arkansas, with the Miller County Judge, the Miller County Tax Assessor, and a Miller County Circuit Judge; however, she does not indicate that any agent of Miller County guaranteed tax exempt status or that Opportunities, Inc., relied on such statements in purchasing and developing Meadowbrook Place. There is no indication in the abstract that Opportunities, Inc., purchased Meadowbrook Place

in reliance upon any statement by an agent of Miller County that the property would be tax exempt based on charity status.

 Reversed and remanded.

CORBIN and THORNTON, JJ., not participating.

Special Justice MARTHA MILLER HARRIMAN joins in this opinion.

Chief Justice ARNOLD and Special Justice JIM H. BOYD dissent.

JIM H. BOYD, Special Justice, dissenting. The issue before the Court is to determine whether or not Appellee's property in question is entitled to exemption from *ad valorem* taxes under the Arkansas Constitution, which states in pertinent part: "The following property shall be exempt from taxation: . . . buildings and grounds and materials used exclusively for Public Charity." Ark. Const., art 16, § 5(b).

The uncontested facts before the Court are that Opportunities, Inc., is a valid, charitable, nonprofit corporation and has been at all times pertinent hereto. Opportunities acquired the realty in question exclusively for nonprofit, charitable purposes; constructed the apartment complex with the intent to further their charitable, nonprofit goals; and have in fact exclusively operated the complex only in furtherance of their charitable, nonprofit goals. Opportunities has lost approximately $500,000 in their elderly housing project associated with the property in question, but have managed to survive. The findings by the Trial Court clearly so hold beyond a reasonable doubt. Tax cases of this type are to be reviewed by the Court *de novo* and the factual findings of the trial court are to be upheld unless clearly erroneous. *City of Little Rock v. McIntosh*, 319 Ark. 423, 892 S.W.2d 462 (1995).

The real issue is whether or not Article 16, § 5(b) of the Arkansas Constitution prohibits a charitable, nonprofit corporation that charges a base fee for its services from receiving an *ad valorem* tax exemption. I find no such prohibition. In my opinion, it is in furtherance of the State's goals to allow a charitable organization using property exclusively for charitable purposes to

receive tax exemption, even if a minimum fee is charged for its services. Many charitable projects could not survive, or would never get started, if their services were not at least partially self-supporting. An obvious way to determine if a project (such as Appellee's elderly housing project) will work is to run projections, *pro formas*, etc. as the business world does routinely and determine what it will take to make the project work. The minimum fee might be premised to follow the old adage that one cannot help those who will not help themselves, or it might just be pure economics. Either way, the bottom line is that the property is used exclusively for charitable purposes, and the elderly housing project has existed as such for years. Did the framers of the Constitution prefer that if a charity was not financially strong enough to offer its services free that it should not exist? If the Appellee cannot afford to give its housing for free, should they just close down and put the elderly on the streets? I do not think so. In Appellee's situation, it seems that they have shown that if they charge each elderly tenant a minimum fee, their elderly housing project works. They make up the difference in costs with regular contributions from charity. They have donated $500,000 to the property in losses, but the project goes on.

In *Hot Springs School District v. Sisters of Mercy of Female Academy of Little Rock, Ark.*, 84 Ark. 497, 106 S.W.2d 954 (1907), the Supreme Court cited with approval the case of *Pennsylvania Hospital v. Delaware County*, 169 Pa. 305, 32 Atl. 456, quoting the Court as follows: "Property which is used directly for the purpose, and in the operation of charity, is exempt, though it may also be used in a manner to yield some return and thereby reduce the expenses."

In *Sebastian County Equalization Board v. Western Arkansas Counseling and Guidance Center, Inc.*, 296 Ark. 207, 752 S.W.2d 755 (1988), the Court reaffirmed the pertinent part of *Sisters of Mercy* by stating: "We held that the paying patients would not destroy the concept that the hospital was being used exclusively for charitable purposes. . . ."

In *Sloan v. Voluntary Ambulance Service*, 37 Ark. App. 138, 826 S.W.2d 296 (1992), the Court of Appeals was required to deter-

mine if an assessment fee on each household in the county where the ambulance service operated disqualified the service from being considered an "Institution maintained and operated wholly as public charity" under the Arkansas Workers' Compensation Act, Ark. Code Ann. § 11-9-102(3)(A)(iii) (1987). Although this was not an *ad valorem* tax case, the principle is the same. In *Sloan*, the Court stated, "We do not think the fees paid to VAS by EMSD prevent, as a matter of law, VAS from being an institution maintained and operated 'wholly' as a public charity. . . ." *Id*. at 142, 826 S.W.2d at 298.

So, where does the idea come from that a public charity's property used exclusively for public charity is not entitled to an exemption from *ad valorem* taxes *as a matter of law* because it charges a minimum fee for its services? The idea has grown case by case because one of the factors often cited as supporting the Court's findings that the property in question was entitled to exemption was that the charity offered its services free if someone couldn't pay. However, none of the cases has clearly held that this was an indispensable element that, in effect, was a matter of law under the Arkansas Constitution. We should not now so hold. Even the Appellant acknowledges that this is really the only issue in this case.

Accordingly, I hold that the facts show beyond a reasonable doubt that the property in question has been, and is being, used exclusively for charitable purposes, and the fact that a minimum fee is charged for its services does not, and should not, prohibit the property in question from being exempt from Miller County *ad valorem* taxes.

I would affirm the lower court's ruling.

Chief Justice ARNOLD joins in this opinion.