## Mary NOWLIN v. Pauline SPAKES, Ex'x

5-5474                                   463 S. W. 2d 650

Opinion delivered March 1, 1971

*Branscum, Schmitt & Mazzanti,* for appellant.

*John W. Elrod,* for appellee.

Lyle Brown, Justice. Appellant Mary Nowlin challenged the validity of the will purportedly executed by her son and which named his sister, appellee Pauline Spakes, as his sole beneficiary. At the conclusion of appellant's case the court sustained appellee's demurrer to the evidence. Appellant contends that the demurrer should have been overruled because she made a *prima facie* case supporting her allegations of incompetency, undue influence, and execution of the will contrary to statutory requirements.

The testator, Allen Nowlin, died in August 1969. For a number of years he suffered from Parkinson's disease. For some six or seven years prior to his death, Allen was so crippled that he had to have assistance in

feeding and bathing himself. He had a mother and nine brothers and sisters and he lived with several of those relatives during that period. Those facts are undisputed.

Nine witnesses testified for appellant. The appellant-mother described the testator's hands as being so drawn and distorted that he did not use them for the last ten years of his life. She said the testator could not sign his own name and that others had to endorse social security checks. "He got progressively worse and his mind was affected. He would see things and think the army was coming in on him with guns, and he accused people of spraying arsenic in his room."

A brother, Grady Nowlin, testified that Allen's speech was so impaired that he was hardly understandable. He also said Allen was unable to sign his checks between 1964 and 1969. Allen lived with Mr. and Mrs. Paul Nowlin from 1965 until 1968. She described Allen's hands as being so drawn together that he could not hold anything. Mrs. Nowlin said she could not handle Allen by herself and that she brought in paid male help to assist her. "His mind was just about completely gone. He didn't remember anything . . He talked of planes crashing in his room . . . sometimes he wouldn't eat because he said we had his food poisoned."

Two of the attendants hired by Mrs. Paul Nowlin testified. George Goss said he bathed Allen, fed him, and gave him medicine. He asserted that it was impossible for Allen to sign his name, even if someone were to place a pencil between his fingers and guide the pencil. He said Allen could barely make a cross on his checks. As to Allen's mentality, Mr. Goss said "He talked crazy like someone was after him and spraying him." Attendant Calvin Kearney testified as to Allen's physical helplessness. He also said he never saw Allen sign his name.

Another brother, Norman Nowlin, testified that he visited Allen when he was staying with appellee and that Allen was out of his mind. He described Allen's fingers as being so stiff and distorted that it was impossible to get a pencil between them.

On March 1, 1968, Allen left the home of Mr. and Mrs. Paul Nowlin and went to visit his sister (appellee), Mrs. Pauline Spakes. That sister was called as an adverse witness. She testified that about two weeks after arrival, Allen told her he wanted to make a will and leave everything to her if she would take care of him until his death. She said she called the lawyer and gave him the information; that the will was drawn and brought to her house; that she put a pencil between Allen's fingers and helped him write his name; and that it would have been impossible for Allen to write his own name without assistance. She conceded that during Allen's stay of eighteen months prior to death, that was the only instance in which he signed his own name. She was asked to identify checks drawn on Allen's account which reflected that she signed the checks "Mrs. Pauline Spakes, for Allen W. Nowlin." Appellee said she told her mother about the will but did not tell her what disposition Allen made of his estate.

In considering the demurrer to the evidence it was the duty of the trial court to give the evidence "its strongest probative force in favor of the plaintiff and to rule against the plaintiff only if [her] evidence when so considered fails to make a *prima facie* case." *Werbe* v. *Holt*, 217 Ark. 198, 229 S. W. 2d 225 (1950). "On demurrer to the evidence we view the proof in the light most favorable to the plaintiffs." *Keck* v. *Gentry*, 238 Ark. 672, 384 S. W. 2d 242 (1964). Gauged by the recited principles we think it clear that appellant made such a case as would support a finding in her favor unless evidence sufficient to controvert it is forthcoming. All appellant had to do was to establish a *prima facie* case with respect to only one of her three allegations, namely, incompetency, undue influence, or execution of the will contrary to statutory requirements. As we review the evidence we have summarized we think appellant met her burden on at least one of her allegations.

Reversed.