C. R. BURGESS, County Judge, Miller County, Ark. et al *v.* FOUR STATES MEMORIAL HOSPITAL

5-5521                    465 S. W. 2d 693

Opinion delivered April 19, 1971

486

*Norman M. Smith,* for appellants.

*Smith, Stroud, McClerkin & Conway,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellants, who are the County Judge and Tax Assessor of Miller County, assert that the chancery court erred in refusing to dismiss appellee's suit to require them to remove all of its property from the county tax rolls, claiming exemption from taxation under Article XVI, Section 5, of the Arkansas Constitution. Appellants raised no jurisdictional questions, and the matter proceeded to trial on the merits. The chancellor, after hearing all the evidence, found that one building once used as a nursing home and another built on the premises by appellee, together with the lands upon which they are located, were not exempt from taxes because appellee received rental income from this property and did not use it exclusively for public charity. He found that all other property of appellee qualified for the exemption, but held that he had no jurisdiction to relieve appellee from 1969 taxes.

Appellee, Four States Memorial Hospital, is a nonprofit Arkansas corporation. Its articles of incorporation prohibit the payment of any net earnings, dividends or other distributions to any officer, director, member or private individual, except as compensation for services rendered or reimbursement of expenses incurred

in connection with the corporation's affairs. Its stated general purpose is scientific, educational and charitable, particularly for ownership and operation of hospitals and other facilities for the care and treatment of sick, injured and disabled persons and incidentally for the education and training of medical students, interns, physicians, nurses, technicians, pathologists and other hospital personnel and for carrying on scientific research for alleviation of human suffering. The corporation has no shares or capital stock, but is composed of one class of members with voting rights. On dissolution or liquidation, all its net assets are to be distributed to one or more scientific, religious, charitable or educational organizations exempt from Federal Income Tax under Section 501(c)(3) of the Internal Revenue Code of 1954 (or the corresponding section of future law). Any such assets not disposed of by the corporation may be distributed for such purposes or to such organizations as may be directed by the circuit court of the county in which the principal office of the corporation is then located.

While appellants refer to their motion as one for a directed verdict, we take it to be a motion challenging the sufficiency of the evidence to warrant the granting of the relief sought pursuant to Ark. Stat. Ann. § 27-1729 (Repl. 1962). In order for the court to have granted such a motion, there must have been no substantial evidence which, when given its strongest probative force in favor of appellee, would have made a prima facie case for appellee. *Nowlin* v. *Spakes*, 250 Ark. 26, 463 S. W. 2d 650. We find ample evidence to justify the denial of the motion. As a matter of fact, we could not say that the chancellor's findings on the merits were not supported by a preponderance of the evidence.

Appellants' argument is that appellee failed to meet its burden of showing that its buildings, grounds and materials were used exclusively for public charity as required by the pertinent constitutional provision. Its basic premises are:

1. Appellee accepted the property as a gift from St. Louis Southwestern Railroad Company, commonly called the Cotton Belt.

2. The administrator employed by appellee was, at the time his services were engaged, Inspector of Hospital Services in the employment of the railroad.

3. Appellee accepted from the Cotton Belt Employees Hospital Trust Association an unsecured, interest-free loan of $127,000 of which $7,000 was used to improve income-producing property not used by appellee for hospital purposes, but rented to a maintenance employee for $45 per month.

4. Living quarters in a building which had been a nursing home were rented by appellee to a doctor who was not on its medical staff, but was an employee of the Employees Trust.

5. All except two of the members of the board of directors of appellee are the same as the directors of the Employees Trust.

6. Only three charity patients have been treated at the hospital.

It is undisputed that the hospital operated by appellee was formerly owned by the St. Louis Southwestern Railroad Lines Hospital Trust and commonly called the Cotton Belt Hospital. It was used exclusively by employees of the railroad or its subsidiaries who were members of the trust. All of the buildings, equipment and lands which were used in connection with the hospital were donated by the railroad company and the hospital trust to appellee about September 1, 1967. The buildings, in addition to the hospital itself, consisted of a dwelling house,[1] and the former nursing home building.

---

[1]Apparently this house was torn down after the property was given to appellee and another built in its stead.

Sam Raney, appellee's administrator, was in charge of the operation of the hospital. He testified that the loan from the Employees Trust was to be repaid when and if appellee could do so. The only writing evidencing the loan was in the minutes of the board of directors of the lender. Raney stated that there were 28 doctors from the local community on the actual medical staff and 9 doctors on a courtesy staff. Any number of patients of a member of the actual staff could be admitted to the hospital, according to the skills or ability of the member physician to treat them. Only four patients of a member of the courtesy staff can be admitted in any one calendar year. Raney exercises discretion as to admission of a patient referred by a physician on the staff, but none is refused treatment and service which the hospital and its staff can adequately render. He said that, even though 50% to 53% of the hospital patients were Employees Trust members, 700 to 1,000 patients who were not members had been cared for by appellee at the hospital. In addition, the hospital admitted approximately 2,000 patients under the Medicare program administered by the United States Department of Health, Education and Welfare. The hospital also provided services under the state Medicaid program, whose payments are limited, however, to 20 days of inpatient services and 12 outpatient visits, after which one becomes a charity patient unless he is transferred to a Little Rock hospital. One of these patients had six admissions and four outpatient visits.

Raney said that a new surgical suite, a new recovery room, a clinic, a new conference room, a nurse's station, an emergency power unit and an x-ray film developer had been added to the hospital by appellee to enable it to adequately serve "public" patients. He also testified that two surgical suites and the second floor of the west entrance had been remodeled and a waiting room converted to a semiprivate visitors' room for this purpose. He added that new desks, chairs and beds had been purchased. He estimated that appellee had spent a couple of hundred dollars for bulldozer work. He totalled expenditures for such purposes from the loan at $123,000.

The hospital has neither emergency room nor maternity ward. The reason given for not having an emergency room was inability of appellee to find doctors to adequately staff it. Raney admitted that a pregnant woman had been denied admission by him, but explained that the hospital wasn't equipped to treat her.

A resolution requiring that the hospital be operated in such a manner as to satisfy criteria of the Federal Internal Revenue Service necessary for an institution for "charitable" patients and directing officers and employees of the hospital not to refuse to accept patients in need of hospital care solely on the basis of their inability to pay was adopted by appellee's board of directors. All patients admitted are charged the same rate. Bills are paid by the patient, insurance companies, federal or state welfare programs, employee associations or not at all. The payment for Medicare patients is based upon a per diem rate adjusted annually with the HEW Department, based upon actual cost of operation plus 2%. The difference between the amount billed to the patient at the regular rate and the Medicare rate is written off by the hospital at the end of the month after the patient's discharge. Raney testified that this difference must be made up by paying patients. Over a three-year period the hospital had written off $46,-227.28 in this manner. It had also written off $2,700 to the Arkansas Public Welfare Department and $2,500 for Arkansas Public Welfare and Medicaid. In its second year of operation the hospital showed a gain of $45,-152, most of which went to offset a deficit of $38,208 in the succeeding year, and the balance into service and improvements. It appears that there would have been a great many more purely charity cases, had it not been for Medicare payments.

It has been held that a benevolent and charitable organization's property used as a hospital may be constitutionally exempt from taxation if it is open to the general public, if no one may be refused services on account of inability to pay and if all profits from paying patients go toward maintaining the hospital and extending and enlarging its charity. *Hot Springs*

*School Dist.* v. *Sisters of Mercy*, 84 Ark. 497, 106 S. W. 954. We do not agree with appellant that appellee's operation is so oriented toward service of the Employees Trust Association that, as a matter of law, it is outside the scope of the constitutional exemption. There is really no evidence to indicate that appellee has not conformed its practice to its stated corporate · purpose. Raney testified that all money received by the hospital is expended for its maintenance and improvement and none diverted from the institution in any manner. Nor is there any evidence that the gift of the property was not outright and without any obligation of appellee to the railroad or its Employees Trust Association.

We do not understand how the failure of the hospital to provide emergency and maternity service could be taken to disqualify it from the tax exemption. There was evidence that it has dietary, maintenance, administration, pharmacy, nursing, surgical, x-ray, laboratory and physical therapy departments and limited outpatient services. We are not aware of any requirement that a hospital provide all services which can possibly be provided by any hospital in order to make its use exclusively for public charity. There is no reason why a hospital whose services are limited, e.g., to surgery or to maternity, should not be entitled to the tax exemption.

It does not appear that the hospital administrator is answerable, in any way, to the railroad or its hospital trust or that the common directors of the hospital and the trust have acted, in any way, to prefer members of the trust over any member of the general public. The mere fact that the members of the trust use the hospital along with other members of the general public, and on the same basis, would not necessarily change its charitable purposes so long as its receipts from any source are held in trust for the furtherance of these purposes. *Fordyce* v. *Women's Christian National Library Association*, 79 Ark. 550, 96 S. W. 155, 7 L. R. A. (n.s.) 485.

The chancellor found that the part of appellee's property for which rents were collected was not being used directly and exclusively for public charity and directed that this part be identified and subjected to taxation. This distinction is proper as the exemption is based upon the actual use of the property, rather than the use of its revenues. *Hot Springs School Dist.* v. *Sisters of Mercy,* 84 Ark. 497, 106 S. W. 954; *Brodie* v. *Fitzgerald,* 57 Ark. 445, 22 S. W. 29; *Robinson* v. *Indiana & Ark. Lbr. & Mfg. Co.,* 128 Ark. 550, 194 S. W. 870, 3 A. L. R. 1426. See also Ark. Stat. Ann. § 84-206 (Repl. 1960). The exemption of that property of appellee which is used exclusively for public charity is not affected because other parts are not exempt. See *Hilger* v. *Harding College,* 231 Ark. 686, 331 S. W. 2d 851.

Appellee cross-appealed from that part of the court's decree which found that it had no jurisdiction of the 1969 tax assessment. The court's decree must be affirmed on cross-appeal. The basic relief asked by appellee was a writ of mandamus to the county judge to remove its property from the tax rolls, and an injunction against the tax assessor restraining his placing the property on the tax rolls. In the first place, the chancery court had no jurisdiction to issue a writ of mandamus. *Nethercutt* v. *Pulaski Co. Spl. Sch. District,* 248 Ark. 143, 450 S. W. 2d 777; *Harber* v. *Rhodes,* 248 Ark. 1188, 455 S. W. 2d 926. Even the circuit court, which has superintending control and appellate jurisdiction over county courts under Article VII, Section 14, of our Constitution, could not direct the county court's action by mandamus. *Rolfe* v. *Spybuck Drainage District No. 1,* 101 Ark. 29, 140 S. W. 988.

In the second place, exclusive original jurisdiction of all matters pertaining to county taxes is vested in the county court. Article VII, Section 28, Constitution of Arkansas; *Turner, ex parte,* 40 Ark. 548; *Price* v. *Madison County Bank,* 90 Ark. 195, 118 S. W. 706. Within the limits of its jurisdiction the county court is a court of superior jurisdiction. *Strawn* v. *Campbell,* 226 Ark. 449, 291 S. W. 2d 508. No other court may

disregard or invade that jurisdiction. *Curry* v. *Dawson,* 238 Ark. 310, 379 S. W. 2d 287. See also *Stumpff* v. *Louann Provision Co.,* 173 Ark. 192, 292 S. W. 106; *Bragg* v. *Thompson,* 177 Ark. 870, 9 S. W. 2d 24; *State* v. *Wilson,* 181 Ark. 683, 27 S. W. 2d 106. This jurisdiction is exercised by the county court, not the county judge. *Needham* v. *Garner,* 233 Ark. 1006, 350 S. W. 2d 194. There is no suggestion that the county judge has acted, attempted to act or proposed to act in this matter in any capacity other than as presiding judge of the county court, that any wrongful diversion of public funds or fraud is involved, or that a tax which is itself illegal is being levied. In these circumstances, the action of the county court cannot be dictated by mandamus, injunction or other process of either the chancery or circuit court. See *Curry* v. *Dawson,* supra; *Turner, ex parte,* supra; *Ward* v. *Boone,* 231 Ark. 655, 331 S. W. 2d 875.

It is true that appellee had a judicial remedy if the property was exempt from taxation for the year 1969, without resort to appeals from the tax assessment. *Clay County* v. *Brown Lumber Co.,* 90 Ark. 413, 119 S. W. 251. There is no doubt that a court of equity may grant relief against a void or illegal tax assessment. *W. P. Brown & Sons Lumber Co.* v. *Sims,* 146 Ark. 253, 225 S. W. 322; *State* v. *Mississippi A. & W. Ry. Co.,* 138 Ark. 483, 212 S. W. 317.

Even if appellee's action against the tax assessor should be outside the exclusive ·original jurisdiction of the county court, the passage of time had taken the matter of 1969 tax assessments entirely out of his hands, so that it was not possible for him to effectuate any decree that the court might have rendered. The courts will not render judgments which have no practical effect in settling the rights of litigants. *Kirk* v. *North Little Rock Special School District,* 174 Ark. 943, 298 S. W. 212; *Griffin* v. *Anderson-Tully Co.,* 91 Ark. 292, 121 S. W. 297, 134 Am. St. Rep. 73.

The assessor was required to make his real estate assessment prior to July 1, 1969. Ark. Stat. Ann. §

84-415 (Repl. 1960). He was required to certify his completed assessment record to the county board of equalization on or before August 1, 1969. Ark. Stat. Ann. § 84-463.1 (Repl. 1960). His report of assessment was to have been filed with the county clerk by the third Monday in August 1969. Ark. Stat. Ann. § 84-447 (Repl. 1960). Assessments were then subject to action by the equalization board until the third Monday in September 1969 [Ark. Stat. Ann. § 84-708 (Repl. 1960)] unless conditions prevailed which extended the time until the third Monday in November 1969 [Ark. Stat. Ann. §§ 84-706, 84-477 and 84-717 (Repl. 1960)], after which even it had no authority to change a tax assessment. *Jones* v. *Crouch*, 231 Ark. 720, 332 S. W. 2d 238. It was the duty of the county clerk to deliver the tax books to the tax collector on or before the third Monday in February 1970.

This suit was filed on September 17, 1969, at which time the assessor had no control over the assessment. The decree dated July 25, 1970 was filed on the 11th day of August, 1970, and resulted from a hearing on the 20th day of July, 1970. On these latter dates the 1969 tax books were in the hands of the tax collector. Neither the tax collector nor the county clerk was ever made party to the action. Insofar as both the county judge and tax assessor are concerned, the question of the validity of the 1969 tax assessment has become an academic one, so the chancellor properly declined to act. *Catlett* v. *Republican Party of Arkansas,* 242 Ark. 283, 413 S. W. 2d 651; *Dermott Drainage District* v. *Cherry,* 217 Ark. 829, 233 S. W. 2d 387. See also *Connor* v. *Ricks,* 212 Ark. 833, 208 S. W. 2d 10.

The decree is affirmed on appeal and cross-appeal.