Cite as 2019 Ark. App. 410

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CV-18-949

| | |
|---|---|
| KAREN HARDESTY, IN HER OFFICIAL CAPACITY AS BOONE COUNTY ASSESSOR<br><br>APPELLANT<br><br>V.<br><br>NORTH ARKANSAS MEDICAL SERVICES, INC., AND NORTH ARKANSAS REGIONAL MEDICAL CENTER, INC.<br><br>APPELLEES | Opinion Delivered September 25, 2019<br><br>APPEAL FROM THE BOONE COUNTY CIRCUIT COURT [NO. 05CV-17-275]<br><br>HONORABLE RUSSELL ROGERS, JUDGE<br><br>AFFIRMED |

**N. MARK KLAPPENBACH, Judge**

Appellant Karen Hardesty, in her official capacity as Boone County Assessor, appeals from the circuit court's order that granted a tax exemption to appellees North Arkansas Medical Services, Inc., and North Arkansas Regional Medical Center, Inc. (collectively "the hospital").[1] The hospital sought tax-exempt status for its seven parcels[2] of land in Harrison, Arkansas, for the 2016 and 2017 tax years, relying on the public-charity tax exemption

---

[1] In her appellate brief, appellant draws no distinction between the two entities concerning responsibility for taxes. For simplicity's sake, we will also draw no distinction between the two appellees in reviewing the narrow issue presented on appeal.

[2] The main hospital itself and the adjacent lots and facilities were already considered tax exempt. The seven parcels at issue were acquired by the hospital in 2013, the parcels are directly across the street from the main hospital campus, and the parcels contain existing clinic buildings, parking areas, and a vacant lot.

provided by article 16, section 5(b) of the Arkansas Constitution, which provides that "buildings and grounds and materials used exclusively for public charity" are exempt from taxation. Following a bench trial, the circuit court found that the hospital had carried its burden of proof,[3] entitling it to the tax exemption, and County Assessor Hardesty appeals. We affirm the circuit court's order.

In civil bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against a preponderance of the evidence. *Tadlock v. Moncus*, 2013 Ark. App. 363, 428 S.W.3d 526. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been made. *Id.* Due regard shall be given to the opportunity of the circuit court to judge the credibility of the witnesses. Ark. R. Civ. P. 52(a)(1) (2018).

We begin with some basic taxation principles. Taxation is the rule, and exemption is the exception. *City of Fayetteville v. Phillips*, 306 Ark. 87, 811 S.W.2d 308 (1991). Exemptions from taxation must always be strictly construed, regardless of merit, in favor of taxation and against exemption. *Id.* On appeal, we review tax cases de novo, setting aside

---

[3]At the bench trial, the parties disagreed on the hospital's burden of proof to establish entitlement to the tax exemption, whether beyond a reasonable doubt, *e.g.*, *Ark. Teacher Ret. Sys. v. Short*, 2011 Ark. 263, at 6, 381 S.W.3d 834, 838, or by a preponderance of the evidence, Ark. Code Ann. § 26-18-313(c) (Supp. 2017). The previous version of the statute established the burden of proof as beyond a reasonable doubt, but in 2015, our legislature enacted a revised and rewritten version of this statute, changing the burden of proof to preponderance of the evidence. The circuit court found that under either standard, the hospital had carried its burden of proof. Because we hold that the circuit court did not clearly err under either standard, and the parties do not advance arguments on appeal about the appropriate burden of proof, we do not address it.

the findings of fact by the circuit court only if clearly erroneous. *Ark. Teacher Ret. Sys. v. Short*, 2011 Ark. 263, 381 S.W.3d 834.

In analyzing the hospital's tax-exemption request, we are guided by Arkansas Supreme Court case law. Tax-exempt status for charitable hospitals has been recognized in Arkansas for over one hundred years. *See Hot Springs Sch. Dist. v. Sisters of Mercy*, 84 Ark. 497, 106 S.W. 954 (1907). More recently, our supreme court interpreted article 16, section 5(b) in the context of charitable hospitals in *Burgess v. Four States Memorial Hospital*, 250 Ark. 485, 465 S.W.2d 693 (1971), holding that "a benevolent and charitable organization's property used as a hospital may be constitutionally exempt from taxation (1) if it is open to the general public, (2) if no one may be refused services on account of inability to pay, and (3) if all profits from paying patients are applied to maintaining the hospital and extending and enlarging its charity." *Burgess*, 250 Ark. at 491, 465 S.W.2d at 697. The entity seeking the tax exemption must show that it is a charitable organization and that the property claimed exempt is used exclusively for charitable purposes. *Sebastian Cty. Equalization Bd. v. W. Ark. Counseling & Guidance Ctr., Inc.*, 296 Ark. 207, 752 S.W.2d 755 (1988).

There is no dispute that the hospital is technically a charitable organization, that the hospital and its clinics are open to the general public, and that no one is refused services due to inability to pay. Hardesty does not take issue with the first two *Burgess* factors. In fact, Hardesty argues that the characterization of the taxpayer is irrelevant. She does not argue that generating revenue necessarily requires disqualification. Hardesty's argument is that the hospital and its clinics are operated or "used" to provide medical care in exchange for money, like any other medical clinic. Hardesty argues that the hospital operates with an

3

expectation of payment for the services it provides, that it generates millions of dollars of annual revenue, that its free services and patient debts that are written off are a very small percentage of the overall income received, and that the free services and patient-debt write-offs within the clinics are an even smaller percentage of the income generated by the clinics. Hardesty contends that this means the hospital's property is "not used exclusively as a public charity."

The hospital counters that Hardesty's argument is misplaced, that generating revenue is necessary for the hospital and its health-care services to exist, that generating income does not destroy the charitable usage of the hospital or its clinics, and that any profits (meaning income exceeding expenses) are used solely to further its charitable purposes. The circuit court agreed with the hospital. We hold that Hardesty has failed to demonstrate clear error in the circuit court's findings.

As stated, Hardesty does not argue that the hospital failed to prove the first two *Burgess* factors. The testimony and evidence presented to the circuit court established those two factors conclusively: The hospital is exempt from federal taxation as a 501(c)(3) organization. The hospital's corporate documents recite that it was organized exclusively for charitable, educational, and scientific purposes, specifically to establish and maintain medical facilities, provide educational activities, and carry on scientific research. It is not authorized to pay earnings to private shareholders or individuals; it is authorized to pay for reasonable compensation for services; and it is permitted to make payments and distributions in furtherance of its purposes. The hospital has no stockholders and declares no dividends. The hospital has a board of directors composed of unpaid volunteers; it operates a hospital

4

and associated hospital clinics that provide primary, obstetric, and internal–medicine care; and its property has parking spaces for those purposes. The hospital, its clinics, and the doctors practicing therein are not permitted to discriminate against any patient on the basis of the patient's economic status or ability to pay for medical services. The seven parcels that the hospital bought were part of the main campus of the hospital, situated across the street from the main hospital, used exclusively by hospital employees to operate outpatient health–care clinics, and the telephone numbers associated with the clinics were all listed in the main hospital's telephone directories. The hospital and the clinics are open to the general public. These undisputed facts were gleaned from the president of the hospital's corporation and the hospital's chief medical officer.

The circuit court relied on the hospital's witnesses who testified about the hospital's overall revenues, its collectable and uncollectable billings, its expenditures, and those figures relevant solely to the clinics. They testified that the hospital uses its revenue to pay salaries, to buy equipment, to pay for maintenance, and to expand on the mission of the organization (i.e., buying ambulances and building an ambulance barn, buying surgical instruments, buying the clinics, providing parking, and running a rural health clinic). In 2016 and 2017, the hospital gave for free or wrote off over two million dollars in medical services, and approximately $30,000 of that debt was attributable to the clinic services. The hospital's witnesses explained that generating revenue is necessary to keep its charitable mission in existence and that any profit is used to add, maintain, or upgrade services it provides to the general public. None of these facts or figures were in dispute.

Hardesty's testimony at trial focused on the usage of the hospital clinics. Hardesty testified that the main hospital and its immediately adjacent lots were deemed a public charity and tax exempt, although she opined that the nonprofit or charity status of the owner or lessee of these seven parcels was irrelevant. She stated that the "primary use" of the property was the governing principle. In denying the applications for tax exemptions related to the clinics, Hardesty relied on her understanding of the training materials and a guide provided by the Arkansas Assessment Coordination Department (AACD). She believed that the parcels the hospital bought that had the clinics and additional parking were "part of the hospital" but would not qualify for tax exemption unless the hospital proved that more than half of the health care provided by the clinics was free of charge, and it was not. Hardesty's AACD materials, however, contained no requirement that either the hospital or its clinics provide more than half of its medical care for free, a fact that Hardesty acknowledged. She testified that "primary" or "majority" property usage was talked about at the training meeting in group discussion.

The circuit court found, in relevant part, that Hardesty's more-than-half-free-clinic threshold was found nowhere in Arkansas law or in the materials on which she relied; that Hardesty's acknowledgement that the main hospital and adjacent lots were exempt was inconsistent with her rejection of the exemption for the hospital clinics and associated parking; and that the hospital had proved entitlement to the tax exemption for the seven parcels at issue. The narrow question presented on appeal is whether the circuit court clearly erred in finding that the seven parcels were used for charitable purposes in the manner necessary to satisfy the required qualifications for tax-exempt status.

In a case involving a hospital run by a not-for-profit organization, our supreme court held in *Hot Springs School District v. Sisters of Mercy*, 84 Ark. 497, 106 S.W. 954 (1907), that the admission of paying patients does not destroy the tax-exempt status of the hospital property. In *Sisters of Mercy*, the Sisters of Mercy were operating a hospital and pharmacy dispensing care and medicine to paying and nonpaying patients. Those who could not pay were treated and received medicine for free whereas the fees generated from patients who paid for services were devoted solely to help pay for the treatment and medicine received by those who could not pay. The supreme court held that the fact that money was received from some of the patients did not impair the character of the charity, so long as the money received was devoted altogether to the charitable object that the institution was intended to further. The supreme court did not require a particular percentage of free medical care. "To qualify for the exemption, a hospital must be a place open to the public where no one may be refused services on account of inability to pay and where all profits from paying patients are applied to maintaining the hospital and extending and enlarging its charity." *Miller Cty. v. Opportunities, Inc.*, 334 Ark. 88, 92–93, 971 S.W.2d 781, 784 (1998) (discussing tax exemption for charitable hospitals but reversing exemption for apartment complex because it had failed to show charitable purpose and it could refuse applicants based on inability to pay).

The thrust of Hardesty's argument is that the hospital's usage of these parcels is for "the pursuit of compensation" and not exclusively for public charity. Hardesty is correct that the property's use determines entitlement to a tax exemption rather than the use of its revenues. *See Sisters of Mercy*, *supra*; *Phillips v. Mission Fellowship Bible Church*, 59 Ark. App.

7

242, 955 S.W.2d 917 (1997). Hardesty readily acknowledges that the receipt of money for the activities carried out in the clinics "does not disqualify them from being considered a charity." Hardesty fails to recognize, though, that the parcels in this case are used by the hospital in a manner consistent with the requirements of *Burgess* and *Sisters of Mercy* in furtherance of the hospital's charitable mission. We hold that the circuit court did not clearly err in finding that the hospital proved its entitlement to tax exemption on these seven parcels.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Ronald P. Kincade*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *John Keeling Baker*, *Megan D. Hargraves*, and *Devin R. Bates*, for appellees.