Cite as 2026 Ark. App. 209

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-23-771

| | |
|---|---|
| BAPTIST MEMORIAL HOSPITAL – JONESBORO, INC., D/B/A NEA BAPTIST MEMORIAL HOSPITAL; AND NORTHEAST ARKANSAS CLINIC CHARITABLE FOUNDATION, INC.<br><br>APPELLANTS<br><br>V.<br><br>HANNAH TOWELL, IN HER OFFICIAL CAPACITY AS TAX ASSESSOR FOR CRAIGHEAD COUNTY, ARKANSAS<br><br>APPELLEE | Opinion Delivered April 1, 2026<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT [NOS. 16JCV-20-330 & 16JCV-22-166]<br><br>HONORABLE MELISSA BRISTOW RICHARDSON, JUDGE<br><br>AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Appellants Baptist Memorial Hospital – Jonesboro, Inc., d/b/a NEA Baptist Memorial Hospital ("NEA Hospital") and Northeast Arkansas Clinic Charitable Foundation, Inc., d/b/a NEA Baptist Clinic ("NEA Clinic"), appeal from the decision of the Craighead County Circuit Court in which the court ruled that certain property owned by NEA Hospital was not exempt from the payment of ad valorem taxes. We affirm.

I. *Background*

NEA Hospital is an Arkansas nonprofit corporation that owns and operates a full-service hospital in Jonesboro. NEA Clinic, also an Arkansas nonprofit corporation, is a multi-specialty physician practice group with approximately two hundred doctors and nurse practitioners that provide outpatient medical services at over twenty locations in Northeast Arkansas. NEA Hospital and NEA Clinic are separate entities that are part of a large, multi-institutional healthcare system controlled by Baptist Memorial Health Care Corporation ("BMHCC"), which is headquartered in Memphis, Tennessee, and is a "charitable" entity under Tennessee law. NEA Hospital and NEA Clinic are affiliated in that they have the same sole corporate member, NEA Baptist Health System, Inc., an Arkansas nonprofit corporation, which has BMHCC as its sole corporate member.[1]

In 2014, NEA Hospital opened a newly constructed hospital complex in Jonesboro. The main hospital is located at 4800 East Johnson Avenue. Connected to the hospital is a five-floor medical office building, known as the "doctor's building," with an address of 4802 East Johnson Avenue. Both the main hospital and the doctor's building are included on one parcel of land, parcel No. 01-144023-02900 (the "Hospital and Doctor's Building parcel"), which contains roughly forty-eight acres. NEA Hospital owns all the real estate, buildings,

---

[1]BMHCC is a twenty-two-hospital medical-care system with eighty to ninety entities—both nonprofit and for profit—that generates annual revenue of about $3.5 billion. BMHCC is a parent entity that provides financial support and operational services to its affiliated/subsidiary entities pursuant to a services agreement. NEA Hospital and NEA Clinic together pay about $22 million a year to BMHCC under the services agreement.

and parking lots on the Hospital and Doctor's Building parcel. The Hospital and Doctor's Building parcel was listed as tax exempt in the Craighead County Assessor's records when the hospital opened in 2014.

NEA Hospital leases physician office space in the doctor's building to NEA Clinic at a market monthly rental rate of $243,364, or over $2.9 million a year, pursuant to a standard commercial lease agreement. NEA Clinic uses the doctor's building mainly for specialty-care practices, including cardiology, general surgery, gastroenterology, endocrinology, neurosurgery, urology, and internal medicine.

Additionally, in 2013, NEA Hospital acquired a small surgical hospital located at 909 Enterprise Drive in Jonesboro, which is included on a separate parcel of land, parcel No. 01-144293-10701 (the "Enterprise Drive parcel"). NEA Hospital owns all the real estate, buildings, and parking lots on the Enterprise Drive parcel. The Enterprise Drive parcel was not immediately used by NEA Hospital. Accordingly, the property was listed as taxable in the Craighead County Assessor's records, and NEA Hospital paid its share of ad valorem taxes through 2017 without protest. Subsequently, NEA Clinic started using space in the building at 909 Enterprise Drive as offices for billing, physical-therapy, and sleep-disorder services. NEA Hospital does not charge rent to NEA Clinic for the use of this portion of the Enterprise Drive parcel.

In April 2018, after the NEA Clinic began using the Enterprise Drive parcel, NEA Hospital applied to the Craighead County Assessor seeking a tax exemption for it pursuant to article 16, section 5 of the Arkansas Constitution as "buildings, grounds, and materials

3

used exclusively for public charity." NEA Clinic applied separately seeking an exemption for its business personal property located at 909 Enterprise Drive on the same basis. The assessor denied both applications on May 21, 2018. Appellants appealed the assessor's decisions to the County Court of Craighead County. The county court affirmed the assessor's decisions in an order entered February 20, 2020. Appellants thereafter appealed to the circuit court in case No. 16JCV-20-330.

In the meantime, the assessor determined during the 2019 assessment that some property owned by NEA Hospital, and previously listed as exempt, had taxable real estate and business personal property value for 2019—namely, the doctor's-building portion of the Hospital and Doctor's Building parcel occupied by NEA Clinic.[2] Accordingly, the doctor's building was added to Craighead County's tax rolls for 2019.

In a letter dated January 17, 2020, the assessor notified NEA Hospital that its "exemption status changed in 2019 for some parcels." The letter included a list of properties that "have taxable real estate and business personal property value for 2019." The list included the Enterprise Drive parcel and noted that "[t]he value is based on the [NEA] Clinic

---

[2]The assessor also determined that an adjoining parcel of land containing a cancer-treatment clinic owned by NEA Hospital that was previously listed as exempt had taxable property value for 2019. Testimony at the bench trial in the circuit court, however, revealed that the 2019 tax-status determination relating to the cancer-center parcel was based on the assessor's understanding that NEA Clinic, and not NEA Hospital, operated the cancer center. At some point during the proceedings below, the assessor was informed that NEA Hospital itself operates the cancer center. As a result, the assessor agreed that the cancer-center parcel should be exempt from ad valorem taxes. Accordingly, the circuit court ruled that the cancer-center parcel was entitled to the exemption, and the tax-exempt status of that parcel is not challenged in this appeal.

4

portions of the building and land, which is 66% based on the information provided during the walk-through of the facility." The letter also indicated an exemption-status change for the doctor's building on parcel No. 01-144023-02900 (the Hospital and Doctor's Building parcel) and noted that "[t]he value is based on the [NEA] Clinic portion of the building footprint." The letter further noted that "[t]his does not yet include the vacant/unused floors of the [NEA] Hospital."

On April 6, 2020, after having received the first tax bill for the 2019 taxes, NEA Hospital applied to the assessor seeking exemption for "4802 East Johnson Ave. (Parcel 01-144023-02900)" as "buildings, grounds and materials used exclusively for public charity." The assessor took no action on that application, which was then deemed denied, and appellants appealed to the county court. The county court entered an order on January 13, 2022, noting that the assessor had denied or failed to approve the application for tax-exempt status as to the doctor's building on parcel "01-144023-02900 (4802 E. Johnson)" for "each of the years 2019–2021" and ordering that the request for approval of the tax-exemption application for this parcel is "denied for all applicable years." Appellants thereafter appealed to the circuit court in case No. 16JCV-22-166.

On April 22, 2022, the circuit court consolidated the separate actions in case Nos. 16JCV-20-330 and 16JCV-22-166.[3] A bench trial commenced on June 20, 2023, during

---

[3]Additionally, the parties stipulated that it was unnecessary for appellants to submit exemption applications for 2022 and that the applications for 2019, 2020, 2021, and 2022, and all subsequent tax years through this pending appeal and its conclusion are

which the circuit court received voluminous documentary evidence and heard testimony from five BMHCC executives and employees and from the Craighead County Assessor. Following the bench trial, the court, in a letter opinion and in its judgment, found that appellants had failed to establish entitlement to the tax exemption for the doctor's building portion of the Hospital and Doctor's Building parcel leased to NEA Clinic and for the portion of the Enterprise Drive parcel occupied and used by NEA Clinic.

This appeal followed.[4]

## II. *Analysis*

### A. Standard of Review

In civil bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against a preponderance of the evidence. *Hardesty v. N. Ark. Med. Servs., Inc.*, 2019 Ark. App. 410, at 2, 585 S.W.3d 177, 179. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been made. *Id.*, 585 S.W.3d

---

deemed to have been made and denied by the assessor and appealed and denied by the county court.

[4]This appeal concerns only those portions of the Hospital and Doctor's Building parcel and the Enterprise Drive parcel that are occupied and used by NEA Clinic and for which an exemption was sought and denied. All property that is occupied and used by NEA Hospital has been classified by the assessor as exempt from the payment of ad valorem taxes, and the tax-exempt status of such property has not been challenged. As such, neither NEA Hospital's charitable nature nor its use of property directly in the hospital's operations is in dispute.

at 179. Due regard shall be given to the opportunity of the circuit court to judge the credibility of the witnesses. *Id.*, 585 S.W.3d at 179 (citing Ark. R. Civ. P. 52(a)(1)).

On appeal, we review tax cases de novo, setting aside the findings of fact by the circuit court only if clearly erroneous. *Id.* at 3, 585 S.W.3d at 179 (citing *Ark. Teacher Ret. Sys. v. Short*, 2011 Ark. 263, 381 S.W.3d 834). Our review begins with a well-established principle established by the Arkansas Supreme Court: "Taxation is the rule, and exemption is the exception." *Id.* at 2, 585 S.W.3d at 179 (citing *City of Fayetteville v. Phillips*, 306 Ark. 87, 811 S.W.2d 308 (1991)). Keeping this principle in mind, exemptions from taxation must always be strictly construed, regardless of merit, in favor of taxation and against exemption. *Id.* at 2–3, 585 S.W.3d at 179.

## B. Exemption

The exemption at issue in this case is stated in article 16, section 5 of the Arkansas Constitution, which provides:

(b) *The following property shall be exempt from taxation*: public property used exclusively for public purposes; churches used as such; cemeteries used exclusively as such; school buildings and apparatus; libraries and grounds used exclusively for school purposes; and *buildings and grounds and materials used exclusively for public charity.*

(Emphasis added.)

The bedrock principles of law on the issue of whether a property is used "exclusively" for a particular purpose were established over a century ago. *Ark. Teacher Ret. Sys.*, 2011 Ark. 263, at 6, 381 S.W.3d at 838. Because the rule of strict construction applies to tax exemptions, the term "exclusively" is to be narrowly construed. *Ark. Conf. Ass'n of Seventh*

7

*Day Adventist, Inc. v. Benton Cnty. Bd. of Equalization*, 304 Ark. 95, 97, 800 S.W.2d 426, 427 (1990). To determine whether a property is used "exclusively" for a given purpose, generally it is necessary to look to the primary use to which the property is put and not to its secondary use. *Id.*, 800 S.W.2d at 427. If the primary use is one allowed under the exemption, a secondary or incidental use, even if for a purpose not within the exemption, is irrelevant. *Id.*, 800 S.W.2d at 427.

Tax-exempt status for charitable hospitals has been recognized in Arkansas for over one hundred years. *See Hot Springs Sch. Dist. v. Sisters of Mercy of Female Acad. of Little Rock*, 84 Ark. 497, 106 S.W. 954 (1907) (allowing the tax exemption when (1) the institution was open to all sick persons regardless of ability to pay and (2) no funds were diverted from the institution and all revenue from paying patients was devoted solely to benefit those unable to pay and to extend and enlarge the charity). Even so, when the exemption from ad valorem taxation depends on use of property, "the general rule is that the exception does not apply to property rented out to others by the exempt association or to other property held or used by it merely as a source of revenue[.]" *City of Little Rock v. McIntosh*, 319 Ark. 423, 429, 892 S.W.2d 462, 466 (1995). This general rule is subject to a limited exception applicable only to the "mere occasional renting out, not interfering with the primary use of the property by the lessor[.]" *Id.*, 892 S.W.2d at 466.

In *Robinson v. Indiana & Arkansas Lumber & Manufacturing Co.*, 128 Ark. 550, 194 S.W. 870 (1917), our supreme court recognized that there is a material difference between the use of property exclusively for public charity and renting it out and then applying the proceeds

8

arising therefrom to the ultimate charitable object. *Id.* at 551, 194 S.W. at 873. Property is exempt under the constitution only when it is *actually* and *directly* used for charitable purposes. *Id.*, 194 S.W. at 873. The court in *Brodie v. Fitzgerald* stated long ago:

> The guarded language of the constitution describing the property to be exempted as "buildings and grounds and materials used exclusively for public charity" leaves no room for doubt that it was not the intention to exempt any other property from taxation save such as is used exclusively for public charity, and that *the exemption cannot be extended to property leased or rented, and from which revenue is derived*, though the same be applied solely to support the charity.

57 Ark. 445, 448, 22 S.W. 29, 30 (1893) (emphasis added). Accordingly, "[t]he fact that the rents and revenues of a property owned by a charitable corporation are devoted to the purposes for which the corporation was organized will not exempt such property from taxation." *Id.* at 449, 22 S.W. at 30. The *Robinson* court further explained:

> Property used to produce income to be expended in charity is too remote from the ultimate charitable object to be exempt. If property is allowed to be used as taxed property, it also is to be taxed. If it competes, in the common business and occupations of life, with the property of other owners, it must bear the tax which theirs bears.

*Robinson*, 128 Ark. at 557, 194 S.W. at 873 (citations omitted).

The General Assembly has implemented these constitutional principles in Arkansas Code Annotated section 26-3-301 (Supp. 2025), which provides, in relevant part, that the following property shall be exempt from taxation:

> All buildings belonging to institutions of purely public charity, together with the land actually occupied by these institutions, not leased or otherwise used with a view to profit, and all moneys and credits appropriated solely to sustaining, and belonging exclusively to, these institutions.

Ark. Code Ann. § 26-3-301(7). Thus, to qualify for the exemption under the constitution, the entity seeking exemption must show that it is a charitable organization and that the property claimed exempt is used exclusively for charitable purposes. *Sebastian Cnty. Equalization Bd. v. W. Ark. Counseling & Guidance Ctr., Inc.*, 296 Ark. 207, 209, 752 S.W.2d 755, 756 (1988).

1. *The burden of proof required to establish entitlement to exemption*

For their first assignment of error, appellants argue that the circuit court erred with respect to the burden of proof required to establish entitlement to an exemption under article 16, section 5 of the Arkansas Constitution. They contend that in analyzing whether the property in question qualified for the charitable tax exemption, the circuit court erroneously failed to apply a preponderance-of-the-evidence standard in favor of a beyond-a-reasonable-doubt standard. At the same time, they acknowledge in their brief that the circuit court found "with regard to the arguments surrounding the burden of proof on <u>county</u> tax exemptions, . . . that application of the differing standards to the issues at bar would not impact this decision." (Emphasis in judgment.) In other words, the court ruled that appellants could not satisfy the burden of proof required under either standard. Because we agree that the circuit court did not clearly err under either standard, we need not resolve the burden-of-proof issue that appellants raise on appeal. *See Hardesty*, 2019 Ark. App. 410, at 2, 585 S.W.3d at 179 (deciding that it was not necessary to resolve the "dispute" regarding the burden of proof required to establish a charitable exemption because the hospital in that case was entitled to the exemption under either standard). Accordingly, we turn directly to

10

appellants' arguments challenging the circuit court's rulings with respect to the property in question.

## 2. *The doctor's building*

As noted, article 16, section 5(b)'s exemption for "buildings and grounds and materials used exclusively for public charity" applies to "all buildings *belonging* to institutions of *purely public charity*, together with the land *actually occupied* by these institutions, *not leased* or otherwise used with a view to profit[.]" Ark. Code Ann. § 26-3-301(7) (emphasis added). The circuit court found that the plain language of section 26-3-301(7) precludes NEA Hospital's requested exemption in this case because the property in question, the doctor's building, belongs to NEA Hospital but is not actually occupied by the hospital and is instead occupied by NEA Clinic under a lease at a market rate.

In arriving at this conclusion, the circuit court found our decision in *Hardesty* "highly instructive" yet "distinguishable in that the *Hardesty* case did not involve a hospital leasing its premises to another entity and charging market rent." We agree. In the *Hardesty* case, as in the instant case, the main hospital itself was already classified as tax exempt, and its tax-exempt status was not challenged. Accordingly, as we noted in *Hardesty*, there was "no dispute that the hospital is technically a charitable organization." 2019 Ark. App. 410, at 3, 585 S.W.3d at 179. Nor was there any real dispute concerning whether the main hospital's operations were open to the general public or whether the hospital provided services without regard to patients' ability to pay. *Id*. at 3, 585 S.W.3d at 179. Rather, the narrow question presented in *Hardesty* was whether the use of seven newly acquired parcels across the street

11

from the main hospital was exclusively for public charity. *Id.* at 1 n.2, 585 S.W.3d at 178 n.2. In *Hardesty*, we said it was. But, as the circuit court in the instant case recognized, the hospital in *Hardesty*, unlike NEA Hospital, was not leasing out the parcels to a third party and was not allowing use of the parcels by anyone other than its own employees. The parcels in *Hardesty*, unlike the property in this case, were "used exclusively by hospital employees" to operate health-care clinics that the assessor herself considered to be part of the hospital no different than any other department of the hospital on the campus.

We cannot say that the circuit court clearly erred in ruling that the doctor's-building portion of the Hospital and Doctor's Building parcel is not exempt because it is not actually occupied by NEA Hospital and is instead occupied by NEA Clinic under a lease at a market rate amounting to nearly $3 million a year. The circuit court's ruling to this effect is consistent with what our supreme court has held since as early as 1893—leased property is not entitled to exemption as property used exclusively for public charity under our constitution. *See Brodie*, *supra.*

The circuit court's decision, moreover, is in line with the supreme court's decision in *Burgess v. Four States Memorial Hospital*, 250 Ark. 485, 465 S.W.2d 693 (1971). In *Burgess*, the court that held that parts of a charitable hospital's property actually used by the hospital for hospital purposes were exempt from taxation. *Id.* at 491–92, 465 S.W.2d at 697. But, similar to NEA Hospital, the hospital in *Burgess* also rented out parts of its property "to a maintenance employee for $45" a month and "to a doctor who was not on the hospital's medical staff." *Id.* at 489, 465 S.W.2d at 695. The supreme court affirmed the lower court's

12

finding that the part of the hospital's property "for which rents were collected was not being used directly and exclusively for public charity" and was therefore subject to taxation. *Id.* at 493, 465 S.W.2d at 697. The court said, "This distinction is proper as the exemption is based upon the actual use of the property, rather than the use of its revenues." *Id.*, 465 S.W.2d at 697. It further held that the exemption of that property of [the hospital] which is used exclusively for public charity is not affected because other parts are not exempt." *Id.*, 465 S.W.2d at 697.

Appellants contend that the roughly $3 million a year in rental income that NEA Hospital receives pursuant to the lease agreement is merely "nominal rental income" that does not defeat the charitable exemption, relying on *Sebastian County Equalization Board*, 296 Ark. 207, 752 S.W.2d 755. But, in that case, unlike here, the counseling center did not lease out its property to a third party for a term of years pursuant to a commercial lease agreement. Rather, the counseling center had a mental-health clinic and a community building that housed a gymnasium used for the center's patients as well as four meeting rooms that the counseling center used to provide classes. When not in use by the counseling center for these purposes, the gymnasium and meeting rooms were open to the general public for a nominal fee. *Id.* at 211–12, 752 S.W.2d at 758. Thus, exemption in that case survived because the property in question there, unlike here, was neither leased nor otherwise used with a view to profit. Accordingly, we affirm the circuit court's finding that under section 26-3-301(7), NEA Hospital cannot avail itself of the statutory charitable exemption for the doctor's building.

To hurdle the lease roadblock, appellants would remove NEA Hospital from the analysis and insert NEA Clinic in its place as the "holder" of the doctor's building, invoking Arkansas Code Annotated section 26-26-905 (Repl. 2020). Section 26-26-905(a) provides that "[p]roperty held under a lease for a term exceeding ten (10) years belonging to a religious, scientific, or benevolent society or institution . . . shall be considered, for all purposes of taxation, as the property of the person holding them." In other words, appellants argue that NEA Clinic is the holder of the doctor's-building lease, and because NEA Clinic is a purely public charity, the doctor's building is exempt from taxation. From this vantage point, appellants contend that the circuit court erred in failing to apply to NEA Clinic the factors that our courts have considered in the context of a charitable organization's property used as a hospital. We restated these factors in *Hardesty*: "A benevolent and charitable organization's property used as a hospital may be constitutionally exempt from taxation if (1) it is open to the general public, (2) if no one may be refused services on account of ability to pay, and (3) if all profits from paying patients are applied to maintaining the hospital and extending and enlarging its charity." *Hardesty*, 2019 Ark. App. 410, at 3, 585 S.W.3d at 179 (quoting *Burgess*, 250 Ark. at 491, 465 S.W.2d at 697).

The circuit court rejected appellants' argument invoking section 26-26-905 for two reasons. The court found that section 26-26-905 does not apply because the term of the instant lease does not exceed ten years. We agree. The court also found, in the alternative, that the evidence does not support a finding "that NEA Clinic is a 'purely public charity' under existing law." In so concluding, the circuit court recognized that "the *Hardesty* factors

14

have not been extended to include a business offering professional services, some of which are pro bono, as being able to avail itself of the public charity exemption in this context." The court further found that even assuming NEA Clinic is a purely public charity, the clinic's use of the doctor's building nevertheless fails under the *Hardesty* factors. We cannot say that the circuit court clearly erred with respect to these alternative rulings.

The evidence does not support a finding that NEA Clinic is a purely public charity. Instead, the evidence demonstrates that NEA Clinic appears to operate the same as any other practice group of doctors offering professional services for fees in a competitive market. NEA Clinic, in fact, operated as a for-profit business before it was acquired by BMHCC. While BMHCC dissolved the clinic's professional association and made the physicians employees of the group's separate charitable-foundation corporation, there is no evidence that NEA Clinic operates any differently post-acquisition. There is no evidence that NEA Clinic has public charity as its primary—if not whole—object, like an institution of "purely public charity" does. *See Sisters of Mercy*, 84 Ark. at 500–01, 106 S.W. at 955 (noting that the Sisters of Mercy's whole object is public charity, the institution has no aim of gain or profit, and none of the sisters receive any compensation).

The record reflects that NEA Clinic provides services in anticipation of payment. It does not hold itself out to the public as a charity. The testimony at trial revealed that NEA Clinic's website, neabaptistclinic.com, does not mention it being a charity. Nor does the website mention NEA Clinic's financial-assistance policy under which all charity provided by the clinic is dispensed. Rather, the website states that NEA Clinic "is dedicated to

15

providing comprehensive, personalized, quality healthcare for our patients throughout the Northeast Arkansas region." In that vein, NEA Clinic owns and operates around twenty clinics in Northeast Arkansas. It has around eight locations in Craighead County that are not on the NEA Hospital campus, including offices for primary care, urgent care, pain management, dermatology, pediatrics, and dialysis. These off-campus "freestanding" clinics operate out of buildings owned by a private for-profit entity that has no affiliation with NEA Hospital or NEA Clinic. NEA Clinic pays the property taxes associated with those clinics pursuant to its lease agreement with the private landowner.

Appellants correctly observe that the *Hardesty* factors have been applied in the context of a charitable organization's use of property other than as a hospital. For example, in *Sebastian County Equalization Board*, the Arkansas Supreme Court found no distinction between a charitable organization's use of property as a mental-health clinic and the use of property as a hospital for purposes of applying those guidelines. 296 Ark. at 209, 752 S.W.2d at 757. But in that case, unlike here, there was "no real dispute that the Center is a charitable organization." *Id.*, 752 S.W.2d at 756. Indeed, "58% of the Center's [active] cases were individuals who paid no more than 10% of the fee or were seen for nothing." *Id.* at 211, 752 S.W.2d at 758. The evidence in this case, in comparison, shows that in 2022, out of the 98,130 total patients seen at all of NEA Clinic's more than twenty locations, only 83 patients received 100 percent charity care, and 107 patients received some other percentage of charity

16

care. Thus, out of almost 100,000 patients treated at all NEA Clinic locations, only 0.194 percent received any percentage of charity care.[5]

The small amount of charity that NEA Clinic provides, moreover, is dispensed pursuant to a financial-assistance policy that is written and promulgated by BMHCC. The financial-assistance policy itself, through its many exceptions and exclusions, establishes numerous criteria before the dispensation of free medical care to all who are unable to pay. Indeed, not all who are unable to pay are even eligible to apply for financial assistance under the policy. Patients who have any type of third-party coverage are not eligible for financial assistance under the policy. While the policy includes a provision for underinsured patients, the evidence shows that NEA Clinic has provided financial assistance only to patients who are completely uninsured. Patients whose primary address is outside the United States also are not eligible for charity under the policy. Additionally, financial assistance is available only for certain services deemed "medically necessary" by the patient's physician. The policy excludes a list of services, including things like annual wellness visits. Even beyond these requirements, the financial-assistance policy considers only the patient's income relative to the federal poverty guidelines without considering the amount of the medical bill or the patient's other liabilities. Further, there was testimony that NEA Clinic attempts to collect a patient's unpaid charges even when a portion of the patient's charges have been reduced

---

[5]There is no evidence that NEA Clinic provides care to all patients *at the doctor's building* regardless of a patient's ability to pay. And as the circuit court noted, while a small percentage of the patients of the more than twenty locations of the NEA Clinic pay nothing for care, the vast majority of patients do pay.

pursuant to the financial-assistance policy before it will write off the debt. Just because NEA Clinic satisfies the requirements for classification as a 501(c)(3) federal tax-exempt entity and purports to have a policy to never turn a patient away because of the patient's inability to pay, it does not automatically follow that NEA Clinic thereby operates as a "purely public charity."

Further, the supreme court has said that to qualify for the exemption, a hospital must be a place where no one may be refused services on account of inability to pay and where all profits from paying patients are applied to maintaining the hospital and extending and enlarging its charity. *Miller Cnty. v. Opportunities, Inc.*, 334 Ark. 88, 92–93, 971 S.W.2d 781, 784 (1998). Here, although there is evidence that NEA Clinic has lost money on its operation of over twenty physician-practice clinics throughout Northeast Arkansas, there is no showing that the money received from paying patients is devoted solely to the charitable benefit of those patients who could not pay. Rather, as the circuit court found, NEA Clinic receives fees for services from paying patients and "in turn pays [BMHCC] under the services agreement." Further, were NEA Clinic ever to develop a surplus, any available funds would go toward payback of the $226 million in debt owed by NEA Clinic to BMHCC. Accordingly, we cannot say that the circuit court clearly erred in finding NEA Clinic is not a "purely public charity utilizing all profits to enlarge the charity."[6]

---

[6]We likewise agree that evidence that Craighead County has a "competitive healthcare market" and that "no doctor's offices in Craighead County are exempt from taxation" supports an additional reason to deny the exemption. The circuit court correctly acknowledged that constitutional tax exemptions should not be utilized to provide one

For these reasons, we affirm the circuit court's ruling that the doctor's-building portion of the Hospital and Doctor's Building parcel is not exempt from taxation.

In a related point, appellants argue that the circuit court's judgment incorrectly states that "[t]he portion of the Hospital [and Doctor's Building] Parcel identified at trial as the 'Doctor's Building' *as valued and apportioned by the Assessor* is not exempt from ad valorem taxes for the years 2019–2023." Appellants contend that this is an "overinclusive assessment" because it included "approximately 50% of the entire Hospital [and Doctor's Building] Parcel," while the doctor's building leased to NEA Clinic makes up only "approximately 30% of the total building space on the Hospital [and Doctor's Building] Parcel."

According to appellants, the judgment "fails to require the Assessor to correctly assess only the leased portion of the doctors building." However, appellants cite no authority for this argument. Moreover, the assessor testified in detail how she determined the taxable portion of the Hospital and Doctor's Building parcel. She stated that her assessment included (1) the total square footage of the doctor's-building improvement located at 4802 East Johnson Avenue that is occupied by NEA Clinic; (2) the commercial land on which the doctor's building sits; and (3) the unused/vacant land located at 4804, 4806, and 4814 East Johnson Avenue. She said that all of this acreage combined was roughly twenty-one acres of

---

business a competitive advantage over another business. *See Crittenden Hosp. Ass'n v. Bd. of Equalization of Crittenden Cnty.*, 330 Ark. 767, 773, 958 S.W.2d 512, 515 (1997) (noting with approval that an additional reason for the lower court's decision to deny exemption is the fact that the physicians' office building leased by the Association to doctors engaged in private practice is in competition with other tax-paying medical facilities in the county).

19

the approximately forty-eight total acres of land on the Hospital and Doctor's Building parcel. There was testimony at trial that NEA Hospital pays taxes on other unused property, apparently without protest. The assessor's testimony is consistent with the January 2020 letter in which the assessor notified NEA Hospital that the list of parcels with taxable property value in 2019 did not yet include the vacant and/or unused floors of the hospital. In light of the evidence presented, we hold that the circuit court did not clearly err by ruling that the parcels "as valued and apportioned by the Assessor" are not exempt from ad valorem taxes.

In a second related point, appellants argue that NEA Hospital should not owe taxes on the doctor's building for 2019. Appellants contend that the assessor did not notify NEA Hospital until January 2020 "that she was retroactively changing the standing exemption status for 2019 for 'the [NEA] Clinic portion of the building footprint' on the Hospital [and Doctor's Building] Parcel after the 2019 appeal deadline had passed." Appellants contend that the timing of the assessor's notification relating to the change in exemption status renders erroneous the circuit court's judgment ruling that the doctor's building "is not exempt from ad valorem taxes for the years 2019–2023." It does not.

From 2014 to 2018, NEA Hospital's doctor's building enjoyed a county-tax exemption. In a January 17, 2020 letter from the assessor, NEA Hospital learned that the exemption status for the doctor's-building portion of the Hospital and Doctor's Building parcel (along with several other parcels) changed, stating that "the propert[y] ha[s] taxable real estate and business personal property value for 2019." In response, on October 6, 2020,

NEA Hospital petitioned the county court for approval of tax-exemption status for the doctor's building, which included its argument that the assessor in 2020 improperly changed her position regarding NEA Hospital's 2019 tax status. In an order entered on January 13, 2022, the county court denied the petition. On February 1, appellants appealed the county court order to the circuit court. On August 14, 2023, the circuit court entered its judgment finding that the doctor's building is not exempt from taxes from 2019 to 2023. This appeal followed.

To the extent that appellants argue on appeal that they have not had the opportunity to seek a tax exemption for the doctor's building for the 2019 tax year or otherwise contest the assessor's decision to change the doctor's building 2019 tax status, the above procedural history refutes that contention. Appellants have fully litigated this issue before the county court,[7] the circuit court, and now this court. To the extent that appellants argue that the assessor lacked the authority to change the doctor's building 2019 tax status, they fail to cite any authority or develop a convincing argument supporting it.[8] This court will not consider arguments not supported by convincing argument or citation to authority, and we will not make an appellant's argument for him or consider an argument that is not properly developed. *Buzbee v. Blann Transp., Inc.*, 2025 Ark. App. 206, at 14, 712 S.W.3d 362, 371.

---

[7]Appellants' brief acknowledges that after receiving the 2019 tax bill in 2020 for the doctor's building, they appealed and objected to the change in exemption status.

[8]Appellants' reliance on Arkansas Code Annotated section 26-27-318(c) (Repl. 2020) is misplaced because it sheds no light on the issue of whether the assessor has the authority to change a parcel's tax status.

### 3. *909 Enterprise Drive*

Appellants also contend that the circuit court clearly erred in finding that a portion of a parcel of land owned by NEA Hospital located at 909 Enterprise Drive, along with the business personal property situated there, is not exempt from taxation. Appellants argue that this portion of the parcel should be exempt because NEA Hospital allows NEA Clinic to use this portion of the parcel free of charge and because NEA Clinic pursues the same "charitable mission" as NEA Hospital.

The circuit court noted that there is no lease involved with this parcel. However, the court found that the portion of the parcel at 909 Enterprise Drive in question is used by NEA Clinic for billing, physical-therapy, and sleep-disorder services—it is not "actually occupied" by NEA Hospital and thus is directly contrary to the exemption provisions of Arkansas Code Annotated section 26-3-301(7). We agree.

We reject appellants' argument that NEA Clinic has a charitable mission as it relates to 909 Enterprise Drive for the same reasons we rejected it as to NEA Clinic's use of the doctor's building. Additionally, there is no evidence that any patient received any charity care for physical therapy or sleep disorders at 909 Enterprise Drive. Accordingly, the circuit court did not clearly err in finding that NEA Clinic is not a "purely public charity using all profits to enlarge the charity,"; therefore, we affirm the court's finding that 909 Enterprise Drive is not exempt from taxation.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Friday, Eldredge & Clark, LLP*, by: *David D. Wilson* and *Martin A. Kasten*, for appellants.

*Quattlebaum, Grooms & Tull PLLC*, by: *Michael N. Shannon*, for appellee.